## KIRK *v.* UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 214. Argued April 14, 1896. — Decided May 4, 1896.

If, under any circumstances, a patentee can sue to recover for the use of a patented article, made before the letters-patent were granted, he cannot do so when he was not the inventor of the thing patented; when the device had been in public use for more than two years before the patent was applied for; when the alleged use was by the United States; and when the government, so far from agreeing to pay a royalty for it, had protested against any patent being issued for it.

THIS was a claim by George E. Kirk as assignee of letters-patent No. 462,224, for a street letter-box, issued October 27, 1891, to Samuel Strong, upon an application filed therefor March 9, 1874.

The original petition was filed October 27, 1884, about ten years after the application for the patent was filed, and seven years before it was finally issued.

The case having been tried by the Court of Claims, that court made a finding of facts, of which the following is an abstract:

On March 30 and August 31, 1869, there were granted to said Samuel Strong two patents, Nos. 88,525 and 94,449, for improvements in street letter-boxes, and on the 15th of September of the same year, Strong entered into a contract in writing with the defendant, through the Postmaster General, whereby Strong contracted to furnish cast-iron street letter-boxes for the use of the Post Office Department, in such numbers and at such times and places as might be ordered by the Postmaster General, up to October 1, 1872. These letter-boxes were to be of the size, shape, weight and model of one deposited by him in the Post Office Department, the design and construction of which were carefully specified in the contract, the United States on its part agreeing to pay $5.50 for each box furnished and put up, according to order.

A few days after this contract was executed, namely, Sep-

tember 27, Strong assigned to one Gideon L. Walker all his interest in the two patents above mentioned, as well as his interest in and to a certain invention in street letter-boxes for which he claimed he had prepared and filed specifications, preparatory to obtaining a patent therefor. But whether such patent was ever issued did not appear.

The letter-boxes so contracted to be furnished by Strong were actually furnished by him, and were the letter-boxes for which he had secured a patent for what is known as the " flat-top" letter-box. But, in consequence of complaints made to the Postmaster General to the effect that such boxes were too wide, unsightly in appearance and unsatisfactory, he called together at Washington a convention of postmasters and other postal officials, to consult with regard to the general good of the service. Before this convention, which met in January, 1870, the Postmaster General laid for inspection several models of letter-boxes, including the one then in use, furnished by Strong, under his contract; but the convention rejected all such models, and, endeavoring to avoid conflict with any existing patent, devised a letter-box based upon their own experience, and by a communication addressed to the Postmaster General, dated January 15, 1870, recommended the adoption of a box " about one and a half feet in length, about six inches in depth and twelve inches in width, with an opening at the top sufficiently large to receive newspapers and magazines, the opening or receptacles especially protected from the weather with a curved top to carry off the water, and a door in the side or front, with side flanges, to take the matter from, and that the hours for collection be distinctly shown upon the outside of the box." At the same time and in the same communication they condemned the street letter-box " now furnished the department under the contract known as the Strong patent."

Pursuant to such recommendations, a letter-box was devised and adopted by the Postmaster General, known as the " round-top," and Strong was engaged to model, manufacture and furnish to the Post Office Department such boxes, with such alterations and improvements therein as the Postmaster

General might suggest; and in pursuance thereof a written contract was entered into between Strong and the defendant on February 18, 1870, to continue in force for four years thereafter. This contract in terms superseded and annulled the contract theretofore made on September 15, 1869. Under this contract of February 18, 1870, Strong modelled and manufactured boxes, with such alterations and improvements therein as were suggested by the Postmaster General, until boxes giving satisfaction to the Postmaster General had been made; and the boxes so modelled and manufactured by said Strong were the boxes furnished by him to and for the use of the Post Office Department, under and during the existence of his said contract, and none other, for which he was paid $5.50 for each of the small size and $7.50 for each of the large size of said boxes.

A few days prior to the expiration of the said contract, namely, on February 11, 1874, Strong filed in the Patent Office a caveat, and on March 9 an application and specifications claiming to be the inventor of the cast-iron street letter-box so devised and adopted by the Postmaster General as aforesaid; which letter-box, so devised and adopted by the Postmaster General, was modelled and manufactured by Strong under the instructions of the Postmaster General, as provided should be done in his contract, and the said boxes so modelled, manufactured and furnished by said Strong were in public use in the letter-carrier cities of the United States for more than two years prior to March 9, 1874, the date when Strong filed his application for a patent thereon.

Pending such application, and on July 29, 1874, the Postmaster General addressed a letter to the Commissioner of Patents, saying, that the department had been informed by Strong that he had taken out two caveats to protect his alleged rights to a certain street letter-box now in use by authority of the department, stating that such box had been in use for four years, under contract with Strong of February 18, 1870, and had been recommended by the convention of postmasters, reduced to shape and form by Strong, as described by them, and could in no just sense be considered

as the invention of Strong, he having simply carried out the views of the convention in this respect.

On January 26, 1881, Strong assigned all his interest in the letters-patent and the invention to the claimant, but it did not appear that Gideon L. Walker, to whom Strong had theretofore executed an assignment in writing, as before mentioned, consented to such assignment to the claimant or any one else on the application of September 4, 1869, referred to in said written assignment.

After the filing of the original petition in this case, to wit, October 27, 1891, there was issued to the claimant, George E. Kirk, assignee of said Samuel Strong, letters-patent No. 462,224, which patent covers the same and identical street letter-box accepted by the Postmaster General, known as the "round-top," which was modelled and manufactured by Strong, as hereinbefore set forth.

Subsequently to February 18, 1874, the date of the expiration of the contract with Strong, the Postmaster General contracted with the Union Foundry and Manufacturing Company, of Reading, Pennsylvania, and others, at divers times, to manufacture and furnish for the use of the Post Office Department the same and identical kind of street letter-box theretofore modelled, manufactured and furnished by said Strong under his contract, as aforesaid; and it does not appear that the contracts for the boxes to be furnished were with the knowledge or consent of said Strong or claimant.

During the six years prior to the filing of the original petition, and up to the date of filing the last amended petition, January 15, 1892, there were purchased for the use of the Post Office Department about 35,000 such letter-boxes, a reasonable royalty for the use of which would be $1.00 per box.

Upon the foregoing finding of facts the Court of Claims decided as a conclusion of law that the claimant was not entitled to recover, and the petition was, therefore, dismissed. Thereupon petitioner appealed to this court.

*Mr. R. H. Steele* and *Mr. Robert A. Howard* for appellant. *Mr. E. H. Holman* was on *Mr. Howard's* brief.

*Mr. Assistant Attorney General Dodge* for appellees. *Mr. Charles C. Binney* was on his brief.

MR. JUSTICE BROWN, after stating the case, delivered the opinion of the court.

In his amended petition of January 26, 1891, claimant asserts himself to be the assignee of the improvements made by Strong, for which the two patents of March 31 and August 31, 1869, were issued; as well as the assignee of another patent, issued February 7, 1882; and also of an application for still another of March 9, 1874. He sets forth the contracts of September 15, 1869, and February 18, 1870, and the performance of the same, and alleges that, "at the termination and expiration of said contract, the said Samuel Strong applied to the Postmaster General of the United States for a renewal of the same; and that, notwithstanding a verbal understanding and promise on the part of the said Postmaster General, made at the time of the execution of the said contract, that there would be such a renewal, said renewal was denied to said Samuel Strong, and no further renewal of said contract has since been made by and between the said parties thereto."

The gist of his complaint is that, after the expiration of the contract, the government continued to use the boxes that had theretofore been manufactured by Strong; that all such letter-boxes "were covered by the claims of the aforesaid application for letters-patent of March 9, 1874, and included by said contracts, and now owned by said claimant;" that such use was in violation of the rights of claimant, in virtue of his said assignment; that since February 18, 1874, the government has refused to renew this contract with Strong, or to pay him anything for the use of the boxes, and that he is entitled to the sum of $3.50 upon each of said boxes used, under an implied contract to pay for the same.

His allegation with regard to the patent for which application was filed March 9, 1874, is that the application therefor was examined by the primary examiner and rejected; that an

appeal was taken to the examiners in chief, which reversed the decision of the primary examiner, and held that Strong was entitled to a patent; that, in accordance with such judgment, the Commissioner of Patents allowed the claims, received the final fee, and ordered the patent to issue, but, notwithstanding all that, " still withholds the patent for reasons known only to himself, and entirely contrary to the said express mandate of law."

In an amended petition, filed January 15, 1892, claimant sets forth that a patent was issued to him on October 27, 1891, in pursuance of the application of March 9, 1874, and that on January 15, 1870, a convention of postmasters, which met at Washington, recommended for adoption to the Postmaster General the boxes filed with the board, and known as the Strong boxes, and that it was the intention and understanding of the Postmaster General that the invention so adopted should be used by the government, and a reasonable and just compensation made for the use of the same.

In this connection, however, it is found by the Court of Claims that the two patents of 1869 were, on the 27th day of September of that year, assigned to Gideon L. Walker, and consequently that Kirk took nothing by the assignment to him of the same patents of January 6, 1881; and that the patent of February 7, 1882, was not included in the assignment to Kirk, but still appeared to be owned by Strong. It follows that the only invention or patent in which claimant appears to have any interest is that known as the "round-top" box, which claimant holds by authority of the assignment of January 6, 1881, for which letters-patent were never issued until 1891, seventeen years after Strong's contract with the government had expired. The court further found that the round-top letter-box was devised and adopted by the Postmaster General himself; that Strong was employed to model, manufacture and furnish these boxes for a term of four years, with such alterations and improvements therein as the Postmaster General might suggest; that a few days before the expiration of this contract, Strong filed a caveat in the Patent Office and made application for a patent for the

boxes so devised and adopted by the Postmaster General, which letter-box had been manufactured by Strong under his instructions; and that they had been in public use for more than two years prior to March 9, 1874, when Strong filed his application therefor; that the Postmaster General protested against the grant of a patent to Strong, and that the same was not granted until seventeen years thereafter.

Discarding, then, the patents of 1869 and 1872 as immaterial, the case resolves itself into the question whether the assignee of a person who did not invent the letter-box in dispute, who had no patent for it until after the suit was commenced, who had no contract to manufacture it, and who finally obtained a·patent against the protest of the government's agent, can recover of the government a royalty for the use of the device upon the theory of an implied promise to pay for such use. There can be but one answer to this proposition.

The application of Strong to patent a letter-box which he did not invent was naturally suggested by the fact that his contract for manufacturing the same was about expiring, and he desired to foreclose others from obtaining a further contract by securing a patent for the box. If a patentee could under any circumstances sue to recover for the use of a patented article, made before letters were granted, (as to which it was held in *Gayler* v. *Wilder*, 10 How. 477, 493; *Brown* v. *Duchesne*, 19 How. 183, 195; *Marsh* v. *Nichols*, 128 U. S. 605, 612; *Sargent* v. *Seagrave*, 2 Curt. 553, 555; and *Rein* v. *Clayton*, 37 Fed. Rep. 354, that an inventor has no exclusive right before a patent has been issued,) it certainly could not apply to a case where the patentee was not the inventor of the thing patented; where the device had been in public use for more than two years before the patent was applied for; and where the government, so far from agreeing to pay a royalty for it, had protested against any patent being issued for it. We know of no principle upon which a contract can be evoked from a distinct refusal of one party to recognize the rights of the other, and a formal protest against any such rights being granted to him.

Certain criticisms are made in the briefs of counsel upon the findings of fact of the Court of Claims, but as no exceptions appear to have been taken thereto, and as the testimony is not, and under our rules cannot be, sent up with the record, these findings must be accepted as conclusive, and for the reasons above stated the judgment of the court below is

*Affirmed.*