## COLLIER *v.* UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 252. Submitted January 9, 1899. — Decided February 20, 1899.

There is nothing in this case to take it out of the settled rule that the findings of the Court of Claims in an action at law determine all matters of fact.

*Marks* v. *United States,* 164 U. S. 297, followed to the point that when a petition, filed in the Court of Claims, alleges that a depredation was committed by an Indian or Indians belonging to a tribe in amity with the

United States it becomes the duty of that court to inquire as to the truth of that allegation; and if it appears that the tribe, as a tribe, was engaged in actual hostilities with the United States, the judgment of the Court of Claims must be that the allegation of the petition is not sustained, and that the claim is not one within its province to adjudicate.

It was the manifest purpose of Congress, in the act of March 3, 1891, c. 538, to empower the Court of Claims to receive and consider any document on file in the Departments of the Government or in the courts having a bearing upon any material question arising in the consideration of any particular claim for compensation for Indian depredation, the court to allow the documents such weight as they were entitled to have.

THE case is stated in the opinion.

*Mr. A. H. Garland* and *Mr. Heber J. May* for appellant.

*Mr. Assistant Attorney General Thompson* for appellees.

MR. JUSTICE WHITE delivered the opinion of the court.

This appeal brings up for review a judgment of the Court of Claims, dismissing, for want of jurisdiction, a claim originally filed in that court by one Ranck, since deceased, to recover for damages alleged to have been sustained on March 2, 1869, by the destruction of property of the claimant by Indians near the line of Texas and Mexico.

The finding of the court is that "The alleged depredation was committed on or about the 2d day of March, 1869, in the southeastern part of the Territory of New Mexico, by Mescalero Apache Indians, who at the time and place were not in amity with the United States." Upon its finding of the ultimate facts thus stated, the court below rested the legal conclusion that it was without jurisdiction of the cause. This court accepts the findings of ultimate fact made by the court below and cannot review them. *Mahan* v. *United States*, 14 Wall. 109; *Stone* v. *United States*, 164 U. S. 380. Applying the law to the facts, it is clear that as the Indians by whom the depredation was committed were not in amity, the court correctly decided that it was without jurisdiction. *Marks* v. *United States*, 161 U. S. 297, followed in *Leighton* v. *United States*, 161 U. S. 291; *Valk* v. *United States*, 168 U. S. 703. This legal conclusion was not disputed in the argument at bar;

but it was contended that this court will, as a matter of law, where the record enables it to do so, determine for itself whether the ultimate facts found below are supported by any evidence whatever, and that it also will determine whether the ultimate facts were solely deduced by the court below from evidence which was wholly illegal. And upon the foregoing legal proposition it is asserted, first, that it is disclosed by the record that there was no evidence whatever tending to show that the depredation was committed by the Mescalero Apache Indians; and, second, that the record also discloses that the conclusion of fact that the Indians committing the depredation were not in amity was solely rested by the court upon certain official reports and documents which were inadmissible. The rule by which these contentions are to be measured is thus stated in *United States* v. *Clark,* 96 U. S. 37, 40, as follows:

"But we are of opinion that when that court [the Court of Claims] has presented, as part of their findings, what they show to be all the testimony on which they base one of the essential, ultimate facts, which they have also found, and on which their judgment rests, we must, if that testimony is not competent evidence of that fact, reverse the judgment for that reason. For here is, in the very findings of the court, made to support its judgment the evidence that in law that judgment is wrong. And this not on the weight or balance of testimony, nor on any partial view of whether a particular piece of testimony is admissible, but whether, upon the whole of the testimony as presented by the court itself, there is not evidence to support its verdict; that is, its finding of the ultimate fact in question." See also *Stone* v. *United States, supra,* 383.

Whether the record before us is in such a state as to support either of the contentions above stated, is the question for decision. In so far as the question of the tribe of Indians by whom the depredation was committed, it obviously is not, since there is not therein contained any reference whatever to the evidence upon which the court based its conclusion on this subject. The portion of the record which is relied upon to establish the contrary is the following statement:

"The court determines that the Mescalero Indians were not in amity at the time of the depredation from the following official reports, documents and facts deduced from the testimony of witnesses which are set forth in the findings."

But the matter thus certified clearly purports only to relate to the evidence from which the court drew its conclusions as to amity, and not to that upon which it based its finding as to the tribe by whom the depredation was committed. It follows, then, that the argument is simply this: That we are to determine that there was no evidence supporting the finding as to the particular tribe committing the depredation, when the record does not disclose and the court has not certified the proof from which its conclusion was drawn. The claim that the record discloses that the finding as to amity rested solely upon certain official reports and documents, finds also its only support in the excerpt from the record just above stated. Whilst it is true the statement certifies that certain reports and official documents were considered by the court in reaching its finding as to the want of amity, it does not state that it was alone based upon these reports, for it says that the determination that the Indians were not in amity at the time of the depredation was likewise drawn from "facts deduced from the testimony of witnesses which are set forth in the findings." Now, whilst the findings contain certain reports and official documents, presumably those referred to in the statement, they do not contain the testimony of any of the witnesses. After reproducing the reports and documents, the record concludes with a mere recapitulation of the result of the testimony of certain witnesses as to the number of Indians by whom the depredation was committed and the circumstances surrounding, that is, the nature of the attack made by the Indians and the conflict which ensued when it was made. It follows that even if the reports and official documents to which the findings refer were legally inadmissible to show want of amity, we could not hold that there was no legal evidence supporting the conclusion that amity did not exist, since all the evidence which the court states is considered on this subject is not in the record. But the

official reports in question were legally competent on the issue of amity. It is conceded that if competent they were relevant, since it is admitted they tended to establish that the tribe was not in amity when the depredation was committed.

The act of March 3, 1891, c. 538, for the adjudication and payment of claims arising from Indian depredations, 26 Stat. 851, provides in the fourth and eleventh sections as follows:

" In considering the merits of claims presented to the court, any testimony, affidavits, reports of special agents or other officers, and such other papers as are now on file in the departments or in the courts, relating to any such claims, shall be considered by the court as competent evidence, and such weight given thereto as in its judgment is right and proper." . . .

" SEC. 11. That all papers, reports, evidence, records and proceedings now on file or of record in any of the departments, or the office of the secretary of the Senate, or the office of the clerk of the House of Representatives, or certified copies of the same, relating to any claims authorized to be prosecuted under this act, shall be furnished to the court upon its order, or at the request of the Attorney General."

These provisions express the manifest purpose of Congress to empower the Court of Claims to receive and consider any document on file in the Departments of the Government or in the courts, having a bearing upon any material question arising in the consideration of any particular claim for compensation for Indian depredation, the court to allow the documents such weight as they were entitled to have.

There is no merit in the contention that, although documents, within the description of the statute, were relevant to the question of amity, they were nevertheless incompetent, as they did not refer to the particular depredation in question, because the statute only authorizes the consideration of reports, documents, etc., " relating to any such claim." As amity was made by law an essential prerequisite to recover, it follows that evidence bearing on such subject was necessarily evidence relating to the claim under consideration.

*Affirmed.*