TRAVELERS EQUITABLE INSURANCE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 31793.    Promulgated March 18, 1931.

*Leland W. Scott, Esq.*, and *A. F. Wagner, C. P. A.*, for the petitioner.

*Brooks Fullerton, Esq.*, for the respondent.

OPINION.

TRUSSELL: In the Revenue Acts of 1921 and 1924, Congress enacted special provisions for taxing insurance companies and, further, it divided such companies into two general classes, namely, (1) life insurance companies, the tax liability of which must be computed pursuant to sections 242 to 245, inclusive, and (2) other than life insurance companies, the tax liability of which must be computed pursuant to sections 246 and 247. To be taxed under the provisions of sections 242 to 245, inclusive, an insurance company must bring itself within the term " life insurance company " as defined in section 242 of the said acts, which provides as follows:

That when used in this title the term " life insurance company " means an insurance company engaged in the business of issuing life insurance and

annuity contracts (including contracts of combined life, health, and accident insurance), the reserve funds of which held for the fulfillment of such contracts comprise more than 50 per centum of its total reserve funds.

The petitioner's reserve in respect to its life contracts was, during 1923 and 1924, less than 50 per cent of its total reserve, and in its returns filed, income was computed by it under sections 246 and 247 of the Revenue Acts referred to. No question is raised as to the correctness of the computation in respect to income derived by petitioner from its casualty business, but respondent has adjusted petitioner's computation of income from its life business as made under the provisions of sections 246 (b) (5) of the Revenue Acts of 1921 and 1924, which are as follows:

(5) The term "premiums earned on insurance contracts during the taxable year" means an amount computed as follows:

From the amount of gross premiums written on insurance contracts during the taxable year, deduct return premiums and premiums paid for reinsurance. To the result so obtained add unearned premiums on outstanding business at the end of the preceding taxable year and deduct unearned premiums on outstanding business at the end of the taxable year.

The petitioner contends that in computing the "premiums earned" from its life contracts its reserve for such contracts represents "unearned premiums" and should be included in the computation under sections 246 (b) (5), thus allowing as a deduction the net addition to reserve for life contracts for each of the years 1923 and 1924. The respondent excluded such reserve from his computation and contends that the reserve for life contracts is not "unearned premiums" and that the deduction of the net addition to reserve as sought by petitioner is not permitted by the sections cited or by other provisions of the taxing acts.

The Revenue Acts of 1921 and 1924 provide that the gross income of an insurance company of the class of this petitioner shall include "underwriting income," which term they define as the "premiums earned on insurance contracts during the taxable year less losses incurred." The "premiums earned" are required by these acts to be computed in accordance with the provisions of the above quoted sections 246 (a) (5) by adding to gross premiums "unearned premiums" at the close of the preceding taxable year and deducting "unearned premiums" at the close of the taxable year. If petitioner is correct in its contention and its reserve maintained in respect to its life contracts under requirements of the Minnesota statute represents "unearned premiums" in the sense in which that term is used in the quoted sections, it is unquestionably entitled in each of the taxable years here in question to adjust gross premium income by the net change in such reserve in each year.

An examination of the insurance laws of the several States shows that they are all in major respects similar, carrying substantially the same provisions. We think that the fact that the insurance business was so standardized by regulation was recognized by Congress in the enacting of the provisions of the Revenue Acts of 1921 and 1924, providing that gross underwriting income and allowable expense deductions should be computed on the basis approved by the National Convention of Insurance Commissioners. In fact, the examination of the testimony before the Senate Committee in respect to the 1921 Act and the proposed change in basis of taxation of insurance companies embodied in the provisions submitted by the Treasury Department and which were enacted in sections 242 to 247 of that act, indicates that these changes were initiated by the insurance companies. These provisions are technical in character and couched in language peculiar to the insurance business, and we think that Congress in enacting these provisions must be considered to have used technical insurance terms employed in the sense in which such terms are generally used and understood in the insurance business.

The reserve of petitioner here in question has been computed under section 3302 of Mason's Minnesota Statutes, which provides:

COMPUTATION OF NET VALUE—The Commissioner shall compute, yearly, the net value on the last day of the preceding year of all outstanding policies in every company authorized to insure lives in this state, calculated upon the basis of the American experience table of mortality, with interest at not exceeding four per cent per annum. Such net value shall be deemed its liability, on account of its unaccrued policy obligations, to provide for which it shall hold funds in authorized investments, approved by the commissioner, to an amount equal to such net value above and free from all other liabilities. * * *

These statutes further provide:

3304–4. The term "earned premiums" as used herein shall include gross premiums charged on all policies written, including all determined excess and additional premiums, less return premiums, other than premiums returned to policy holders as dividends, and less reinsurance premiums and premiums on policies cancelled, and less unearned premiums on policies in force. But any participating company which has charged in its premiums a loading solely for dividends shall not be required to include such loading in its earned premiums, provided a statement of the amount of such loading has been filed and approved by the commissioner of insurance.

\* \* \* \* \* \* \*

3312. "Unearned premiums," insurance reserve, net value policies, and "premium reserve" shall severally refer to the liability of an insurance company upon its insurance contracts other than accrued claims computed by rules on valuation hereinafter established.

An examination of the insurance laws of other States shows that those using the term "unearned premiums" in respect to life insur-

ance define that term in practically the same words as used in the Minnesota statute and provide for computation of the net value of policies on the same basis as section 3302 of the Minnesota statute quoted above. Thus section 1, chapter 175, General Laws of Massachusetts, defines " unearned premiums " as meaning " the net value of policies " and this it defines as " the liability of the company upon its insurance contracts, other than accrued claims, computed by rules of valuation established by sections 9 to 12, inclusive." By section 8340 of the Code of Alabama it is provided that " the terms ' unearned premiums ' and ' reinsurance reserve ' and ' liability reserve ' and ' net value of policies ' or ' premium reserve ' severally, intend the liability of an insurance company upon its insurance contracts, other than accrued claims computed by rules of valuation established by section 834." By section 3274 of Shannon's Code of Tennessee it is provided that " the terms ' unearned premiums ' and ' insurance reserve ' and ' net value of policies ' or ' premium reserve ' severally, intend the liability of an insurance company upon its insurance contracts other than accrued claims computed by rules of valuation established by sections 3288-3291."

Counsel for petitioner cites us to Huebner Life Insurance (1923) p. 8, et seq.:

But keeping the premium the same from year to year, instead of increasing it in accordance with increasing age, involves the payment during the earlier years of a sum over and above that required to pay the current cost of insurance. In other words, during the early years the Company is accumulating a fund out of excess premiums which will be drawn upon in the later years when the same annual premium becomes insufficient to meet the current cost. This overcharge in the yearly premiums does not belong to the Company but is held in trust for the policyholder at an assumed rate of interest for the purpose just indicated. Considering a large number of policies, this overcharge or unearned premium (usually called the reserve) represents that sum which, together with the future premiums paid by policyholders, will enable the Company to meet its claim according to the mortality table in use. This method of thus accumulating a reserve fund is fundamental to any sound plan of life insurance.

We think it clear that the term " unearned premiums " has a fixed and definite meaning in respect to life insurance as the net value of the policies computed according to the accepted actuarial rules employed under section 3302 of the Minnesota Statutes in computing petitioner's reserve in respect to its life policies. We do not find this term used in any other sense in life insurance business and we must conclude that it was with such meaning that Congress used it in sections 246 of the applicable acts in providing a method for computing net taxable income from life insurance business. Our conclusion is supported by the fact that such meaning is in no way incon-

sistent with the wording or the purpose of that section and is economically sound. The insistence of respondent's counsel is that to allow as a deduction in computing earned premium the addition to the reserve and to also allow the deduction of losses incurred, as specifically provided for in the Acts, would be to allow the same item twice, in contravention of sections 247 (c), which provide, " Nothing in this section or in section 246 shall be construed to permit the same item to be twice deducted." In this contention it is overlooked that it is not merely the addition to reserve which is allowed as a deduction. The net change in the reserve, whether by increase or decrease is reflected, the effect being to reduce income by net additions to reserve and increase it by net reductions. For every loss accrued, income for the year is increased by the corresponding item in the reserve representing net value or unearned premium of the policy on which such loss is payable.

Petitioner is entitled, in computing earned premiums on its life insurance business, in each of the taxable years here involved, to add to gross premiums received from life policies the unearned premiums at the close of the preceding taxable year, as represented by the sum of its reserve in respect to such policies, and to deduct the sum of such reserve at the close of the taxable year.

Our conclusion in respect to this issue makes it unnecessary to pass on petitioner's second and fourth assignments of error. Respondent has confessed error in respect to the third assignment, in including in petitioner's taxable income for 1923 the amount of $2,139.75, representing a refund on account of income tax overpaid.

Reviewed by the Board.

*Judgment will be entered pursuant to Rule 50.*