## UTAH HOME FIRE INS. CO. v. COMMISSIONER OF INTERNAL REVENUE.
### No. 717.

Circuit Court of Appeals, Tenth Circuit.
April 10, 1933.

Rehearing Denied May 16, 1933.

Benjamin H. Saunders, of Washington, D. C. (Charles D. Hamel, of Washington, D. C., Theodore L. Holman, of Salt Lake City, Utah, and Hamel, Park & Saunders and Edward M. Woolf, all of Washington, D. C., on the brief), for petitioner.

John G. Remey, of Washington, D. C. (G. A. Youngquist, Asst. Atty. Gen., Sewall Key and Norman D. Keller, Sp. Assts. to Atty. Gen., and ·C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and John D. Foley, Sp. Atty., Bureau of Internal Revenue,

both of Washington, D. C., on the brief), for respondent.

Before LEWIS, PHILLIPS, and McDERMOTT, Circuit Judges.

McDERMOTT, Circuit Judge.

The petitioner's operations in 1920 resulted in a loss, reflected in its surplus, occasioned by the large amount of business written that year, and the correspondingly heavy reserves it was required to set up to protect outstanding policies. In 1921 the business disclosed a large profit by reason of the cancellation of many of its policies and the release of reserves against them. The Commissioner declined to permit petitioner to deduct its 1920 surplus loss from its 1921 income. The Board of Tax Appeals affirmed and this is a petition to review that decision. The same situation arose in 1924–1925 with the same result.

Fire insurance companies conduct their business on an "earned premium" basis, as contradistinguished from the "premium received" or "premium written" basis. That is to say, they calculate their profits on the premiums which are earned during the year, and not upon premiums which are received during the year. Premiums are paid in advance for assuming the risk of loss over a period of one, three or five years. The premium is not in fact earned when the policy is written, but is earned as time elapses. If a $100.00 premium is received for a one year policy, $50.00 is set up, at the close of the calendar year, as a reserve for the unexpired term of the policy, thus roughly averaging policies that have from one to eleven months to run. If a $100.00 premium is received for a five-year policy, $90.00 is set up as a reserve against the four and a fraction years it has to run. Such reserves are essential for the protection of the policyholder, and for an honest accounting of profits or losses, and are required by the Uniform System of Accounts prescribed by the National Convention of Insurance Commissioners in use in every state in the Union, and by the statutes of many states, including Utah. Utah Comp. Laws 1917, § 1153. The commission of the agent, premium taxes, and some other expense, are paid out during the year the policy is written, and together amount to more than $10.00. In a five-year policy, therefore, the reserve plus expenses exceeds the premium received. If the company's business is running along uniformly, from year to year, the release of reserves from prior years will make

up the difference. If the business is increasing, a draft must be made upon other corporate funds to pay these advanced expenses and set up the necessary reserves, to be returned in later years as the premium is earned.

The taxing statutes are patterned after the "earned premium" system of accounting. The 1909 excise tax law allowed insurance companies to deduct from actual income "the net addition, if any, required by law to be made within the year to reserve funds." 36 Stat. p. 113. The Revenue Act of 1918, § 234 (a) (10) (40 Stat. 1057) and of 1921 (42 Stat. 227) carried similar language. This net addition to the reserves was arrived at by subtracting the reserves at the beginning of the year from the reserves at the end of the year. Reg. 45, Art. 548 expressly supplied what the statute appears to have left to implication, that a net decrease in the reserves —a minus addition—shall be returned as income. Under these statutes, underwriting income was arrived at by the use of a convenient formula which converts premiums on policies written into premiums earned, by deducting net additions to reserve, plus or minus, as commanded by the statute. The formula is, premiums written plus reserves at the beginning of the year, less reserves at the end of the year. The Revenue Act of 1924, § 246 (43 Stat. 253 [26 USCA § 1006 note]) carries this formula into the statute; instead of allowing "net additions to the reserve" as a deduction from gross income, it defines underwriting income as premiums earned, and gives the above formula for arriving at the earned premiums. The difference in the statutes, if there be any of consequence, is not material here; in the earlier statutes, premiums received were treated as gross income, from which a deduction or addition was made for increase or decrease in reserves. Under the later statute, the written premiums were so adjusted before carrying the balance into income. The statutory provisions with reference to this policyholders' reserve, sometimes loosely denominated a "reinsurance reserve," have been discussed by the Supreme Court in Maryland Casualty Co. v. United States, 251 U. S. 342, 40 S. Ct. 155, 64 L. Ed. 297, and United States v. Boston Insurance Company, 269 U. S. 197, 46 S. Ct. 97, 70 L. Ed. 232.

The income of petitioner for the tax years involved was computed upon the basis prescribed by the statute and above set out, and there is no quarrel with the principle of the taxing statutes or with the computation. In 1920 petitioner's business had grown so rapidly that it was required to dip into its surplus to pay its expenses of operation and set up the necessary reserve. In 1921, its business fell off rapidly, and the reserve set up for 1920 was then freed. Petitioner contends that all of the reserve so released for dividends or other corporate purposes in 1921 was not income, because a part of it went to restore the surplus used for the purpose of the reserve the year before; that to tax such income used to restore surplus is to tax capital and not income.

The argument is a plausible one, but it proves too much. It is either an attack on the "earned premium" method, which petitioner disclaims, or it is an effort to offset the losses of 1920 against the earnings of 1921, which the statutes do not permit except to a limited degree. The earned premium theory is essentially honest and sound, and is so thoroughly ingrained in the insurance world that it is not now subject to attack, as the petitioner readily concedes. It is not entirely perfect, for commissions to agents and taxes on premiums are prepaid expense, and are charged against the year in which the premium is received, and not prorated over the years in which the premium is earned. This deviation from absolute precision is, it should be noted, an additional protection to the policyholder. The result, particularly on five-year policies, is that a larger amount must be set up as a reserve than the company's net on the policy. These prepaid expenses come back as the premium is earned. The necessary result is that when a company starts business, it shows a loss on its five-year policies for the first year. That loss is reflected in the surplus account, as all losses are. So it is when business is on an ascending scale; a sudden increase in premiums written results in a corresponding increase in reserve, and a shrinkage in surplus which is returned as the business runs off. In the case at bar, by its reinsurance treaty with the Hartford in 1919, a large amount of new business was written in 1920; so much that the expenses of operation, agents' commissions and taxes, exceeded the corporate income after setting up the necessary reserves. When the treaty was canceled in 1921, the reserves were released and the prepaid expenses flowed back into surplus, thus disclosing a large profit from the 1921 business. That profits and losses are additions or subtractions from the surplus account is of no moment, for profits and losses are measured by the fluctuations in that account.

It is too late now to attack the earned

765

premium basis for computing profits because prepaid expenses are not distributed over the term of the policy, or because the reserve required by the state may be correspondingly larger than necessary. Nor can the basis be abandoned because in a particular case, on account of an abnormal increase or decrease in business, an apparent hardship results. The 1925 tax is the same in principle; a reinsurance treaty with another company resulted in a similar loss in the year 1924 and a correspondingly large profit for 1925. The difference in the wording of the applicable statute does not change the situation.

Adhering to the earned premium method of computing profits and losses, as we do, the case resolves itself into an effort to carry 1920 losses forward as an offset to income earned in 1921. Income taxes are assessed on an annual basis, and the year is the unit. Congress has, in a limited way, made provision for such carry-over, but that statute is not here involved; in fact, the commissioner allowed petitioner credit under that statute for the year 1925. A hardship results in many instances from taking the year as a unit; but some unit must be taken, and alleviation of the hardship is for Congress and not the courts.

The order of the Board of Tax Appeals is affirmed.