## MASSACHUSETTS PROTECTIVE ASS'N, Inc., v. UNITED STATES.

### No. 3416.

Circuit Court of Appeals, First Circuit.

Aug. 6, 1940.

---

F. H. Nash, of Boston, Mass., and Erwin N. Griswold, of Cambridge, Mass., for appellant.

Edward H. Horton, Sp. Asst. to the Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen:, Sewall Key and Norman D. Keller, Sp. Assts. to the Atty. Gen., and Edmund J. Brandon, U. S. Atty., and C. Keefe Hurley, Asst. U. S. Atty., both of Boston, Mass., on the brief), for appellee.

Before MAGRUDER and MAHONEY, Circuit Judges, and PETERS, District Judge.

MAHONEY, Circuit Judge.

This is an appeal from a judgment of the District Court in favor of the government in a suit brought under the Tucker Act,· 24 Stat. 505 (1887), 28 U.S.C.A. § 41 (20), by the Massachusetts Protective Association, Inc., a Massachusetts stock insurance corporation, to recover federal income taxes assessed for the years 1926 and 1928 and collected by a collector who is now out of office. The case was tried upon a stipulation and a supplemental stipulation of facts, and upon oral testimony taken in open court. The facts as found by the District Court from this evidence may be summarized as follows:

The plaintiff is a stock corporation organized under the laws of Massachusetts. During the calendar year 1926, the plaintiff was engaged, as it had been for many years previously, in writing accident and health insurance in Massachusetts, New York and in a number of other states, and was taxable for 1926 as an insurance company, other than life.or mutual, under the provisions of Section 246 of the Revenue Act of 1926[1], 44 Stat. 48, 26 U.S.C.A.Internal Revenue Acts, page 195.

---

[1] "Sec. 246. (a) In lieu of the tax imposed by section 230, there shall be levied, collected, and paid for each taxable year upon the net income of every insurance company (other than a life or mutual insurance company) a tax as follows:

"(1) In the case of such a domestic in-. surance company, 12½ per centum of its net income;

  *    *    *    *    *    *

"(b) In the case of an insurance company subject to the tax imposed by this section—

"(1) The term 'gross income' means the combined gross amount earned during the taxable year, from investment income and from underwriting income as provided in this subdivision, computed on the basis of the underwriting and investment exhibit of the annual statement approved by the National Convention of Insurance Commissioners;

"(2) The term 'net income' means the gross income as defined in paragraph (1) of this subdivision less the deductions allowed by section 247;

*    *    *    *    *    *

"(4) The term 'underwriting income' means the premiums earned on insurance contracts during the taxable year less losses incurred and expenses incurred;

"(5) The term 'premiums earned on insurance contracts during the taxable year' means an amount computed as follows:

Since 1919 the plaintiff has been issuing an accident and health policy which is non-cancellable by the company and which the insured can keep in force until reaching the age of seventy simply by paying the premiums fixed in the policy. The premium on this type of policy from the date of issuance until the insured reaches the age of fifty is in a constant and fixed amount which cannot be increased by the company. The premium increases at fifty, the amount of such increase being fixed in the policy, and thereafter remains constant and fixed.

The plaintiff includes with its annual income tax return an annual statement in the form approved by the National Convention of Insurance Commissioners setting forth its income and disbursements, assets and liabilities, and other pertinent information. By Section 246(b)(1) of the Revenue Act of 1926, this statement is made the basis for the computation of statutory gross income. With its income tax return for 1926 the plaintiff submitted a copy of the statement for that year. On this blank, on page 5, line 25, the plaintiff reports its pro rata unearned premiums, i. e., the part of the net premiums received on all its policies proportioned to the unexpired term of the period for which the premiums were received. Of the last quarterly premiums paid on December 1, 1926, there was here reported 66⅔ per cent of the whole which was paid for protection to be rendered in January and February of 1927, plus any premiums paid in advance.

On the same page on line 25½, the plaintiff reports its "Additional Reserve on Non-Cancellable Health and Accident Policies", as of the last day of the taxable year. This reserve is set up as a liability of the company and is held to meet the additional hazards on non-cancellable health and accident policies due to the fact that the premiums must remain constant while the risk and cost inevitably increase.

Before 1922, the plaintiff had on its books no additional reserve on non-cancellable health and accident policies similar to that shown on line 25½ of its annual statement for later years. In March, 1923, the New York Superintendent of Insurance re-quired such a reserve to be set up; and pending a determination of the proper size of such reserve as shown by its own experience, the plaintiff set up an arbitrary reserve of $75,000 as of December, 1922. This was increased each year thereafter because of the growth of sales of this type of contract until in December, 1925, on the basis of the 1921 computed experience, the reserve set up was $750,000. This was reported on line 25½ of the annual statement and was approved by the state insurance commissioner. In 1926, a further increase of $491,098.68 was made to the reserve of $750,000, and the total of $1,241,098.68 was reported on line 25½.

In arriving at its net income for 1926, the plaintiff was required to compute its earned premiums according to Section 246(b)(5) of the Revenue Act of 1926. In so doing the plaintiff added to its gross premiums written during the year (minus return premiums and premiums paid for reinsurance) its "unearned premiums" as of December 31, 1925, including in this amount both the pro rata unearned premiums, shown on line 25 of the 1925 statement, and the sum of $750,000, the additional reserve for non-cancellable health and accident insurance, shown on line 25½ of the 1925 statement, and it deducted from the amount so obtained the pro rata unearned premiums, shown on line 25 of the 1926 statement, and the sum of $1,241,-098.68, the additional reserve for non-cancellable health and accident insurance, shown on line 25½ of the 1926 statement. In other words, as one of the items of net "unearned premiums" which the plaintiff is entitled to deduct from gross premiums written, the plaintiff deducted $491,098.68 which equalled the net addition to the additional reserve for non-cancellable health and accident insurance between December, 1925, and December, 1926.

In 1930, an actuarial firm employed by the plaintiff completed a study of the plaintiff's experience in the years 1927–1929, and reported what the reserve should be for the coming year on the basis of that experience. It also informed the plaintiff that if the 1927–1929 experience had been known in December, 1925, the proper reserve at that time would have been $900,890

"From the amount of gross premiums written on insurance contracts during the taxable year, deduct return premiums and premiums paid for reinsurance. To the result so obtained add unearned premiums on outstanding business at the end of the preceding taxable year and deduct unearned premiums on outstanding business at the end of the taxable year; * * *."

rather than the $750,000 based on the 1921 experience and actually held by the plaintiff.

Thereafter, in 1930, the Commissioner assessed against the plaintiff a deficiency in its 1926 income tax. A portion of this deficiency was made up by the Commissioner's determination that in computing the "earned premiums" according to Section 246(b)(5), the plaintiff should have taken as the reserve for December 31, 1925, shown on line 25½ of the statement for that year, the sum of $900,890 rather than the $750,000 actually held by the plaintiff and reported on line 25½, and accepted by the Commissioner in computing the 1925 tax. The result of this action by the Commissioner was to include in the plaintiff's "premiums earned" in 1926, the difference between $900,890 and $750,000, i. e., $150,890. This difference resulted in an additional tax, plus interest, of $23,428.29. The plaintiff duly filed a claim for refund which was rejected, and this suit was brought to recover the $23,428.29 with interest thereon.

The District Court also found as a fact that in all of the plaintiff's tax returns, the Commissioner has allowed as an exclusion from gross income through the nine years between 1922 and 1930, the net increase in the additional reserve for non-cancellable health and accident insurance except this amount of $150,890. Since 1930, the 1927–1929 experience has been used to figure the reserves set up, and the net increase in the aggregate reserves has been accepted each year by the Commissioner as an exclusion from gross income.

The refund for 1928 is claimed for the purely technical reason that a small portion of the $23,428.29 here sought to be recovered was not paid in cash but was a credit for an alleged 1928 overpayment which was applied by the Commissioner to the alleged 1926 deficiency. Since the defendant raised no question, either in the trial court or in this court, of the propriety of including this sum in the present suit, other than the general claim that it was not allowable as a deduction from gross income, we do not consider it necessary to pursue the matter further than to say that we consider it to be properly before us. See United States v. Bertelsen & Petersen Co., 1939, 306 U.S. 276, 59 S.Ct. 541, 83 L.Ed. 647.

At the close of all the evidence, both the plaintiff and defendant moved for judgment in their favor, and the plaintiff requested the court to make certain findings of fact and conclusions of law. The judge denied the plaintiff's motion, and filed an opinion containing findings of fact and conclusions of law, giving judgment for the defendant. To the denial of its motion for judgment and the refusal to make the requested findings and conclusions, the plaintiff excepted.

Later the plaintiff moved to vacate the judgment and reopen the trial on the ground that the judge had erred in not allowing it to see his opinion and take exception to the denial of its motions and requests for findings before judgment was entered. The judge denied the motion and held that the exceptions previously taken safeguarded the plaintiff's rights on appeal. This court has held that the opinion in a case brought under the Tucker Act, supra, is a part of the record, and exceptions taken to findings of fact and conclusions of law there made and to the judgment entered are duly taken during the course of the trial. United States v. Hyams, 1 Cir., 1906, 146 F. 15; United States v. Swift, 1 Cir., 1905, 139 F. 225. The first bill of exceptions was properly taken and is validly before this court. The District Court properly denied the motion to vacate the judgment and reopen the trial.

The real question involved in the present controversy is whether the plaintiff in computing its "premiums earned" for the year 1926, under Section 246(b)(5) of the Revenue Act of 1926, was entitled to exclude therefrom the net addition made during that year to the additional reserve for non-cancellable health and accident policies required by state laws. In other words, is this addition to the reserve fund a part of "unearned premiums" within the meaning of the above section?

The plaintiff contends that the words "unearned premiums" mean not only the pro rata portion of the premiums collected for the period which has yet to run, shown on line 25 of the annual statement, but, in addition, includes the annual additions to the reserve, set up on line 25½, to take care of the increased risk or additional cost of insurance in the later years of the insured's life. Where the policy is a level premium non-cancellable policy, the plaintiff claims that some of the premiums collected in the early years are unearned and must be set up in this reserve to provide

funds for paying the policy obligations in the later years when the cost of the insurance is greater than the level premium collected in those years. Since the plaintiff claims that the portion of the premiums so set aside is in fact unearned, it insists that it is deductible from gross premiums according to the method provided in Section 246(b)(5).

On the other hand, the defendant asserts that the words "unearned premiums" are strictly limited to that portion of the premiums covering the unexpired term of the period for which they are paid, i. e., the pro rata unearned premiums, shown on line 25 of the annual statement. The main argument on which the government rested its case is that the net addition to the additional reserve for non-cancellable health and accident policies is no longer deductible from gross premiums in order to arrive at gross income, and that such net addition represents "earned premiums".

The District Court gave judgment for the defendant on the ground that the net addition to the reserve was "earned premiums" within the meaning of Section 246(b)(5) and that Congress did not intend to allow this addition as a deduction. The District Judge in his opinion stated that he could not find from the evidence that the total premium collected from the insured in any one period, even in the later years in which he is entitled to have his policy, is inadequate to take care of the risk or cost of insurance during that period; that when a quarterly premium was accepted, it was accepted for payment for insurance for three months only; that the company guaranteed nothing but that the policy would be kept in force for the next three months; and that the fact that the plaintiff was required to take some part of its earned or unearned premiums to set up a solvency reserve is of no importance as far as Section 246(b)(5) is concerned. He held that only the pro rata unearned premium, shown on line 25, was deductible. We cannot agree with this disposition of the case.

■■ The plaintiff's motion for judgment on all the evidence, in a case tried without a jury, is the equivalent of a motion for a directed verdict and raises a question of law whether the findings support the judgment and whether the findings are supported by evidence. Maryland Casualty Co. v. Jones, 1929, 279 U.S. 792, 49 S.Ct. 484, 73 L.Ed. 960; Griffin v. Thompson, 5 Cir., 1925, 10 F.2d 127; Bank of Waterproof v. Fidelity & Deposit Co., 5 Cir., 1924, 299 F. 478; cf. Federal Intermediate Credit Bank v. L'Herisson, 8 Cir., 1929, 33 F.2d 841. Though ordinarily the findings of fact in a trial without a jury are conclusive, where the proper motions are made and exceptions taken at the trial, and when, as here, the record contains all the testimony on which the findings are based, the appellate court can see if the findings are supported by evidence and, if not, can disregard them and reverse the judgment. Collier v. United States, 1899, 173 U.S. 79, 19 S.Ct. 330, 43 L.Ed. 621; United States v. Clark, 1877, 96 U.S. 37, 24 L.Ed. 696; Conners v. United States, 1 Cir., 1905, 141 F. 16; cf. Kirk v. United States, 1896, 163 U.S. 49, 56, 16 S.Ct. 911, 41 L.Ed. 66. The cases cited by the defendant contain nothing to the contrary since they involve cases where the proper motions were not made at the trial to raise the question of lack of evidence.

In a non-cancellable health and accident policy the premium remains level throughout the life of the policy (except perhaps for a readjustment, included in the policy, at a certain age, after which the premium is again level until the expiration of the policy) even though the risk insured against increases with the age of the insured and even though the claim costs in the later years of the policy are, therefore, correspondingly greater than those of the earlier years. It follows, therefore, that in each of the earlier years of a non-cancellable policy the net annual premium collected exceeds the cost of the insurance for those years, while in each of the later years, the cost exceeds the net annual premium. Therefore, the additional reserve for non-cancellable health and accident policies is set up and used to supplement the net annual premiums of such policies in the later years to the extent that the prospective cost in those years exceeds the net annual premiums. Equitable Life Assurance Society v. Commissioner, 1935, 33 B.T.A. 708.

Jonathan Sharp, a witness for the plaintiff, in explaining the workings of this reserve, testified as follows:

"The simplest way to consider the reserve shown on line 25½ is to consider a simple non-cancellable contract, the cost of insurance for the first year being $1, the second $2, the third $3 and the fourth

$4, or a total of $10. You have an increasing cost of insurance on the average. If those premiums are paid $1 the first year, $2 the second, $3 the third and $4 the fourth, there would be no additional reserve required, but if the premiums are paid $2.50 the first year, $2.50 the second year, $2.50 the third, and $2.50 the fourth, then $1.50 has to be set aside as an additional premium in advance or unearned in the first year, and 50 cents in the second, and they are used in the third and fourth years to make up the difference."

Here it is seen that if the policy is a non-cancellable level premium policy, the annual premium contains, on a given date, two "unearned" portions, e. g., the portion of actual cost for the period for which the premium is paid proportioned to the part of the period which has not yet expired, and that portion of the premium, over and above the actual cost of insurance for the period for which the premium is paid, which represents the amount which must be set aside in order to meet the excess of claims in later years over the level premium then collected. In the above example, suppose the $2.50 level premium is paid on July 1, 1925. On December 31, 1925, fifty cents of the one dollar which the insurance for a year actually costs is unearned, since only one-half the protection has yet been given. This is the pro rata unearned premium reserve which is shown on line 25 of the annual statement. However, there is another sum which is also "unearned", i. e., the $1.50 which was collected as part of the premium but which is in excess of the actual cost of the insurance and must be put into the additional reserve for non-cancellable health and accident insurance to pay the excess cost above the premium collected in the third and fourth years of the illustration. This is shown on line 25½ of the annual statement.

In the case at bar, the pro rata unearned premium reserve merely represented the amount of the premiums collected which had not been earned because the period for which protection had been bought had not yet entirely elapsed. The additional reserve represented the extra amount included in the premium, made necessary by the fundamental principles of non-cancellable (or guaranteed renewable) insurance, to make up what experience had shown to be the excess of the cost of the insurance in later years over the level premium collected in those years. The entire premium of a non-cancellable health and accident insurance policy could not be wholly earned at the end of the period for which it was paid and be used by the plaintiff in any way it pleased, for by the very nature of the insurance a portion of the premium represents payment now for future coverage at a time when the premium is not sufficient to pay the cost of the insurance.

The reason that this reserve must be set up is that the plaintiff has guaranteed not to increase the premium as the cost of the insurance increases, and to renew the policy automatically on the payment of each succeeding level premium. Without this guarantee the policy would have been a simple non-renewable accident and health policy, on which there would have been no need for an additional reserve since the premium could have been raised at the end of each period to correspond with the risk and cost of the insurance for the coming period, and thus would have been wholly earned at the expiration of the period. The difference is exactly that which exists between a one year term policy of life insurance and a renewable term policy with level premium. See Huebner, Life Insurance (1923) 8 et seq.

The statements in the conclusions of law suggest that, as a matter of fact, the total premium collected in any period is never inadequate to pay the cost of the insurance for that year, that the plaintiff guaranteed nothing more than to keep the policy alive for the next three months, and that the pro rata unearned premiums were in fact the only portion of the premiums unearned. We do not believe these statements can be harmonized with the uncontradicted evidence and the nature of non-cancellable health and accident insurance. See Craig, The Actuarial Basis for Premiums and Reserves in Personal Accident and Health Insurance, (1931) 17 Proceedings of the Casualty Actuarial Society, 51, 66–67; Laird, Non-Cancellable Accident and Health Insurance Underwriting Problems, (1921) 7 id. 302, 316–318; Maverick, "Rates and Reserves for Non-Cancellable Health and Accident Policies" (1921) 3. In so far as the conclusions of law hold that the additional reserve for non-cancellable policies is not, as a matter of law, to be included in the phrase "unearned premiums" in Section 246(b) (5) of the Revenue Act of 1926, they are in our opinion erroneous.

■■ Unless the contrary appears, statutory words are presumed to be used in their

ordinary and natural meaning. Helvering v. San Joaquin Co., 1936, 297 U.S. 496, 56 S.Ct. 569, 80 L.Ed. 824; De Ganay v. Lederer, 1919, 250 U.S. 376, 39 S.Ct. 524, 63 L.Ed. 1042. And where the applicable section deals with a particular trade or business, as insurance, the technical insurance terms must be considered to be used in the sense in which such terms are generally used or understood in the insurance business. Travelers Equitable Insurance Co. v. Commissioner, 1931, 22 B.T.A. 784; see G.C.M. 2318, VI-2 C.B. 80, 81 (1927); Hearings before the Senate Finance Committee, on H.R. 8245, 67th Cong., 1st Sess. (1921) 394.

The uncontradicted oral testimony in this case shows that in the insurance business the term "unearned premiums" includes more than the pro rata portion, shown on line 25, and specifically includes the reserve for non-cancellable health and accident policies, shown on line 25½. Before Congress passed the Revenue Act of 1921, 42 Stat. 227, insurance authorities had publicly recognized that this reserve was a part of unearned premiums. See, e. g., Laird, Maverick, supra. It thus appears that at the time when the statute was first enacted it was well understood that this particular reserve was included in the technical term "unearned premiums" used by Congress.

That the term was so understood appears even more clearly from an examination of the blank of the National Convention of Insurance Commissioners, which is made the test of gross income by Section 246(b) (1) of the Revenue Act of 1921, supra, and the corresponding section of each successive act. At the time the Revenue Act of 1921 was adopted, the blank contained only line 25 for the entry of unearned premiums. In 1922, line 25½ was added to provide a space for segregating the reserve which was only necessary for non-cancellable health and accident policies. See Proceedings of the National Convention of Insurance Commissioners (1922) 41, 50. The ordinary cancellable policies had no unearned premium except the pro rata reserve and needed no line 25½ reserve. It is significant that the new line was numbered 25½, indicating that it was a subdivision of line 25, and that it was denominated an "additional reserve". To make it even clearer that in finding "premiums earned" the pro rata reserve of line 25 and the additional reserve of line 25½ should be deducted, explicit instructions to that effect were put on page 8 of the blank dealing with the computation of "premiums earned". See Proceedings of the National Convention of Insurance Commissioners (1924) 175, 190. The fact that there was no specific line showing this particular item separately at the time the Revenue Act of 1921 was enacted does not mean that Congress did not intend to include this reserve in the term "unearned premiums" as then understood. Home Title Insurance Co. v. United States, 2 Cir., 1931, 50 F.2d 107, 111. When the Revenue Act of 1926 re-enacted Section 246(b) (1) providing that "gross income" should be computed on the basis of the statement of the National Convention of Insurance Commissioners, the blank, as shown above, expressly provided for the deduction of the additional reserve for non-cancellable health and accident insurance in arriving at "earned premiums". Congress, in re-enacting this section, must have been referring to this current statement including the deduction of this reserve.

The close analogy of non-cancellable health and accident insurance, where the risk increases and the premium remains constant, to renewable term level premium life insurance has already been noted. In Travelers Equitable Insurance Co. v. Commissioner, supra, a life insurance company was taxed under Section 246 of the Revenue Acts of 1921 and 1924 (identical with the same section of the 1926 Act) as an insurance company, other than life or mutual, as it did not come within the definition of a life insurance company set out in Section 242 so as to be taxed as such under Sections 242–245. The Board of Tax Appeals held that its life insurance reserves, built up from the excess of the early level premiums over the cost of the insurance to compensate for the later excess of cost over premium, precisely as the non-cancellable health and accident reserves are calculated, were "unearned premiums" within the meaning of Section 246(b) (5) and should be added to the pro rata unearned premium reserve for ordinary cancellable casualty policies. The question presented was analogous to the question here, and the Commissioner announced his formal acquiescence in the decision. X-2 C.B. 71 (1931). We agree with the conclusion of the Board that the holding "is in no way inconsistent with the wording or the purpose of that section [§ 246] and is economically sound". The decision and reasoning are directly applicable here.

The defendant, however, contends that the additional reserve for non-cancellable health and accident policies is not to be added to unearned premiums in computing gross income, because Congress in the Revenue Act of 1926 made no provision for the deduction from gross premiums of insurance companies, other than life or mutual, of the net addition to reserve funds required by law, which had been allowed to all insurance companies prior to the Revenue Act of 1921.

Close examination of the provisions of the Revenue Act of 1921 relating to insurance (which were re-enacted in the Revenue Acts of 1924 and 1926), and of their legislative history, discloses that no departure was made from the previous system of taxing only the "earned premiums" of insurance companies. This had previously been accomplished by including all premiums in gross income and allowing the unearned portion represented by the net addition to reserve funds to be deducted. The new statute simply continued the same system, as far as insurance companies other than life or mutual were concerned, by defining underwriting income as "premiums earned" and providing for the computation of those premiums in Section 246(b) (5) by subtracting from gross premiums the "unearned premiums" which were still represented by the same reserves. Utah Home Fire Insurance Co. v. Commissioner, 10 Cir., 1933, 64 F.2d 763, certiorari denied, 1933, 290 U.S. 679, 54 S.Ct. 103, 78 L.Ed. 586. Section 246(b) (5) in no way prevents the deduction of the net addition to reserve funds required by law if the addition represents unearned premiums.

Furthermore, any contention of the defendant that Section 246(b) (5) prevents the deduction of the net addition to reserve funds required by law proves too much. The pro rata unearned premium reserve is the original basic reserve fund required by law for all types of insurance. Maryland Casualty Co. v. United States, 1920, 251 U.S. 342, 348, 40 S.Ct. 155, 64 L.Ed. 297; cf. Central National Fire Insurance Co. v. Commissioner, 1931, 22 B.T.A. 1054. The defendant's argument would prevent this reserve from being deducted, yet the pro rata premium reserve is unquestionably deductible from gross premiums to find premiums earned.

Finally, the defendant proposes that the additional reserve on non-cancellable health and accident policies cannot be unearned premiums because if a policy is cancelled by an insured he receives no surrender value and the plaintiff keeps the excess reserve accumulated.

■■ Whether a premium is considered earned or unearned depends upon the nature of the risk and policy involved. American Title Co. v. Commissioner, 1933, 29 B.T.A. 479, affirmed 3 Cir., 1935, 76 F.2d 332. Fire and ordinary casualty insurance premiums become fully earned as soon as the period for which the premium was paid has expired, for the risk expires at the same time; but a title insurance premium is fully earned the moment it is paid although the risk continues indefinitely. American Title Co. v. Commissioner, supra. And marine insurance premiums are often not considered earned until the entire risk has expired. See Mass.Gen.Laws (Ter.Ed. 1932) c. 175, § 10; Huebner, Property Insurance (1927) 355.

■ The surrender value of a life insurance policy is never the full value of the insurance reserve but is diminished by a surrender charge, and the payment on cancellation of a fire insurance policy is not the total of the pro rata unearned premium but that amount minus the customary monthly short rate. See Mass.Gen.Laws (Ter.Ed.1932) c. 175, §§ 99, 144. Thus, the "unearned premium" cannot be tested by what the company must return on cancellation.

■ Congress is only interested in determining what part of a company's gross income should be treated as net income for the purposes of taxation. McCoach v. Insurance Co. of North America, 1917, 244 U.S. 585, 37 S.Ct. 709, 61 L.Ed. 1333. In general, premium income is not such, and its inclusion in gross income is only justified by the deductions allowed. See Hearings before the Committee on Ways and Means on the Revenue Act of 1918, 65th Cong., 2nd Sess., Pt. 1 (1918) 811. The additional reserve for non-cancellable health and accident policies, whether returnable to the insured or not, is not available for the use of the general purposes of the plaintiff. It is held as a liability to provide for the payment or reinsurance of specific contingent insurance liabilities proven by experience to be a part of the cost of this particular type of insurance in the future years. When an insured cancels his policy, or when the plaintiff reinsures its risks or pays a claim, the sums represented by the reserve on the cancelled policy or the

claims, or the total reserve in the case of reinsurance, no longer remain in the reserve but become a part of "gross income" within the meaning of the statute. Cf. Central National Fire Insurance Co. v. Commissioner, supra; Union Underwriters of New York et al., 1926, 4 B.T.A. 472. And the time that portions of premiums which have been set aside in true insurance reserves can be included in gross income is "only where it is clearly shown that subsequent business conditions have released the amount of them to the free beneficial use of the company in a real, and not in a mere bookkeeping sense". Maryland Casualty Co. v. United States, supra, 251 U.S. at page 353, 40 S.Ct. at page 159, 64 L.Ed. 297.

As long as these reserve funds must be held to provide for expected insurance liabilities in the future on these non-cancellable health and accident policies and are not to be used for the general purposes of the company, they are not "earned premiums" within the meaning of Congress and not includible in gross income. The test is not whether the part of the premium set aside in the reserve for non-cancellable health and accident insurance "belongs" to the company in the event of cancellation or lapsing of the policy, but whether that amount is such a part of the company's gross income as Congress considered should be treated as net income for the purposes of taxation. McCoach v. Insurance Co. of North America, supra. We hold that it is not.

The practically unbroken administrative practice of allowing the inclusion of this reserve as unearned premiums in Section 246(b) (5), both in the case of the plaintiff and as generally conceded by the defendant in its answer to the motion to reverse and remand, plus the re-enactment of the relevant portions of the statute eight times, and the Commissioner's acquiescence in the analogous case of Travelers Equitable Insurance Co. v. Commissioner, supra, should settle the case unquestionably. See Haggar Co. v. Helvering, 1940, 308 U.S. 389, 60 S.Ct. 337, 84 L.Ed. 340; Helvering v. Wilshire Oil Co., 1939, 308 U.S. 90, 100, 60 S.Ct. 18, 84 L.Ed. 101; Alaska Steamship Co. v. United States, 1933, 290 U.S. 256, 262, 54 S.Ct. 159, 78 L.Ed. 302; Edward's Lessee v. Darby, 1827, 12 Wheat. 206, 210, 6 L.Ed. 603.

The plaintiff is clearly entitled to include the additional reserve for non-can-

cellable health and accident policies, shown on line 25½ of its annual statement, in "unearned premiums" in computing its "earned premiums" in accordance with Section 246(b) (5) of the Revenue Act of 1926.

The only question which remains is whether the Commissioner was correct in assessing a deficiency on the ground that the plaintiff should have used as the amount for the additional reserve at the end of 1925 the $900,890 which the experience of 1927–1929 indicated would have been the proper amount of the reserve at that time if the subsequent experience had been known, rather than the $750,000 which was the actual amount allocated to the reserve on the basis of the 1921 experience, the only experience then known. We think the Commissioner was wrong.

It is stipulated that the Commissioner used the figure of $750,000 in computing the plaintiff's tax for 1925. The effect of substituting, in 1930, the sum of $900,890 in place of $750,000 as the reserve held on December 31, 1925, in computing the 1926 tax is to include in "premiums earned" for 1926 the difference between those two amounts, or $150,890, representing an additional tax plus interest of $23,428.29. This $150,890 was a part of the actual addition made to the reserve funds between December 31, 1925, and December 31, 1926, based on the experience of 1921. The reserves of 1925 and 1926 were both accepted as proper by the Commissioner and the various state insurance departments. That the fund as of December 31, 1925, should have amounted to $900,890 was not known and could not have been known until 1930. Any amount held in the reserve between 1925 and 1930, as shown above, is not "earned premiums" within the meaning of the statute but is "unearned premiums". This $150,890 was so held in the reserve, and is, therefore, "unearned premiums". The Commissioner had no right to include it in the plaintiff's gross income.

The additional reserve for non-cancellable health and accident policies is properly includible within the term "unearned premiums" as used in Section 246(b) (5) of the Revenue Act of 1926. The plaintiff in 1926 used the proper figure for said additional reserve as of December 31, 1925, in computing the "unearned premiums" in accordance with Section 246(b) (5). Therefore, the deficiency of $23,428.29 assessed by the Commissioner because he in-

cluded the $150,890 above referred to in the plaintiff's gross income as "earned premiums" for 1926 was erroneous. The District Court should have granted the plaintiff's motion for judgment.

In the view we take of the construction of Section 246(b) (5) of the Revenue Act of 1926, and in the light of the defendant's answer to the motion, it is not necessary to consider the plaintiff's motion to reverse and remand for a new trial to establish the administrative practice, and the motion is accordingly denied.

The judgment of the District Court is reversed and the cause remanded to that court, with direction to enter judgment for the plaintiff in the sum of $23,428.29, with interest from July 15, 1931.