1160

ILLINOIS LIFE INSURANCE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 67201. Promulgated July 12, 1934.

*Samuel B. Kraus, Esq.*, for the petitioner.
*L. W. Creason, Esq.*, for the respondent.

### OPINION.

SMITH: This is a proceeding for the redetermination of a deficiency in income tax for 1929 of $1,115.25. The petitioner alleges that the respondent erred in disallowing the deduction from gross income of (1) a portion of the depreciation sustained by it upon its furniture and fixtures; (2) an amount claimed as depreciation upon certain medical information cards; and by an amended answer the respondent alleges that he erred (3) in not excluding from the company's reserve funds the mean of a "survivorship investment fund" and that through his failure to do so the petitioner has erroneously been allowed a deduction of $133,755.71 in the computation of the deficiency; and (4) that the respondent erroneously failed to disallow the deduction from gross income of $1,241.91 representing discounts on premiums claimed in the return "as interest on indebtedness." The respondent has moved to increase the deficiency accordingly.

The petitioner is an Illinois corporation which has its home and principal office in Chicago. During the calendar year 1929 and prior thereto it was engaged in the business of issuing and writing life insurance policies on the life of individuals.

## Issue No. 1.

During the year 1929 the petitioner owned and used in its business certain furniture and fixtures which it had acquired between 1921 and 1929 and for which it had paid $69,753.19. Its purchases of such assets in 1929 amounted to $5,635.78. The useful life of these assets was approximately ten years. They were used by the petitioner in both its investment and underwriting business and their use in connection with the investment department of its business, producing the statutory income designated interest, dividends, and rents, amounted to 28 percent of their use for all purposes. The remaining 72 percent of use was in connection with the production of the petitioner's nonstatutory or underwriting income.

The petitioner included in deductions from gross income reported on its income tax return for the calendar year 1929 the amount of $6,975.31 as depreciation on furniture and fixtures, which amount represented 10 percent of the cost of all the furniture and fixtures owned. In determining the deficiency upon which this proceeding is based the respondent allowed only $1,953.09 of the amount so deducted by the petitioner, being 10 percent of the cost of that portion of the furniture and fixtures which was used in the production of statutory income, that is, income from interest, dividends, and rents. The petitioner claims the deduction of the full amount of $6,975.31.

This issue is decided in favor of the respondent upon the authority of *Rockford Life Ins. Co.* v. *Commissioner*, 292 U. S. 382. The depreciation deduction as to purchases in 1929 is subject to adjustment in accordance with the respondent's regulations; they were not owned for a full year.

## Issue No. 2.

During the calendar year 1929 petitioner owned certain so-called medical information cards which had been acquired at a cost of $51,164.27 during the years 1921 to 1929, inclusive. The amount expended in the year 1929 was $7,517.06. The medical information cards were individual cards. Each card contained a code report of the physical disabilities found upon examination of individuals applying for insurance to life insurance companies which purchased such cards from the Medical Inspection Bureau. Each life insurance company which purchased these cards made a report of the physical

impairments found upon the examination of the applicants. The cards were replaced from time to time if and when later examinations of the same individuals were made. Such of the cards as were not otherwise replaced within a period of approximately ten years were removed from the files or destroyed.

The petitioner included in the deductions from gross income reported on its income tax return for 1929 the amount of $5,116.43 as depreciation or obsolescence of such medical information cards, being 10 percent of the total cost thereof. In determining the deficiency proposed in the 60-day deficiency notice upon which the computation herein is based the respondent disallowed the deduction of this amount of $5,116.43.

All of the medical information cards hereinabove referred to were used exclusively in the production of nonstatutory or underwriting income and no part of these cards was used in the production of petitioner's statutory net income; that is, income from interest, dividends, and rents. We sustain the action of the respondent in disallowing the deduction of the $5,116.43 in question. *Rockford Life Ins. Co.* v. *Commissioner, supra.*

## Issue No. 3.

During and prior to the calendar year 1929 the petitioner issued certain so-called survivorship investment policies. A specimen copy of a " 20-Payment Life Survivorship Investment Policy " was introduced in evidence as Joint Exhibit A. The provisions of this policy relative to the survivorship investment feature are that upon such policies the petitioner sets aside a portion of each premium payment which is placed in the " survivorship investment fund." This fund is accumulated at the rate of $3\frac{1}{2}$ percent per annum compound interest from the dates of the respective payments of premiums. At the expiration of the 20-year life of the policy the insured has the option of continuing the policy as a fully paid-up policy without further premiums, and receiving in addition a cash payment of the survivorship investment apportioned to his policy or a fully paid nonparticipating life policy for such amount as will be purchased by the survivorship investment at the applicable single premium rate, or the policyholder may surrender the policy and receive in cash the entire guaranteed cash surrender value plus the portion of the survivorship investment fund apportioned to his policy. For each calendar year there is a different survivorship class. The survivorship investment fund can not be used except for the payment of survivorship benefits and at the end of 20 years the entire fund in the class maturing in that year is to be distributed among all the members in good standing in the class in proportion to their respective contributions to the fund established for that class.

In determining net income, life insurance companies are authorized by section 203 (a)(2) of the Revenue Act of 1928 to deduct from gross income "An amount equal to the excess, if any, over the deduction specified in paragraph (1) of this subsection [tax-free interest], of 4 per centum of the mean of the reserve funds required by law and held at the beginning and end of the taxable year."

The survivorship investment funds at the beginning and end of the taxable year of the petitioner were as follows:

| | December 31, 1928 | December 31, 1929 |
|---|---|---|
| "Survivorship investment funds" | $3,249,580.06 | $3,342,162.91 |
| "Additional liability on S. I. policies contingent on payment of deferred and uncollected premiums" | 48,707.53 | 47,334.82 |
| Total | 3,298,287.59 | 3,389,497.73 |

In its income tax return for 1929 the petitioner deducted from gross income $133,755.71 representing 4 percent of the mean of the " survivorship investment funds " at the beginning and end of the year 1929.

The sole question arising upon this issue is whether the reserve funds above described were " reserve funds required by law." The petitioner was organized and operated under the laws of the State of Illinois. In 1929 its operations were governed by an act approved May 20, 1907, in force January 1, 1908, and officially printed in the Session Laws of 1907, page 367. This act is also contained in Cahill's Illinois Revised Statutes (1929), chapter 73, commencing at paragraph 375. Section 1 of the act provides in part as follows:

SEC. 1. That from and after January 1, 1908, no policy of life insurance shall be issued or delivered in this State or be issued by a life insurance company organized under the laws of this State, unless the same shall provide the following:

\* \* \* \* \* \* \*

(5-c) The provisions of the preceding paragraphs numbered (5-a) and (5-b) of this section shall not apply to any form of paid-up insurance or temporary insurance or pure endowment insurance, issued or granted in exchange for lapsed or surrendered policies, or to nonparticipating policies: *Provided, however,* that if any company shall issue any nonparticipating policy under the terms of which any stipulated part of premiums received is to be placed in a separate fund for subsequent apportionment, such company shall furnish the Department of Trade and Commerce each year a statement showing the number and amount of all such policies in force at the beginning of the year for which the statement is made; of all such policies issued and revived or terminated during the said year with the mode of termination; and the number and amount of all of such policies in force at the end of said year. Also a statement showing any and all amounts provisionally set apart, ascertained or calculated or held awaiting apportionment upon such policies according to classes, at the beginning of said year, the additions made to the said

fund during the year with the source from which such additions arose, the deductions made from the said fund (if permitted by the contract) during the year with the reasons therefor and the amount of said fund at the end of the year; which shall be carried as a distinct and separate reserve liability of the company for the benefit of the classes of policies from the premium payments on which the sum was accumulated. No part of said fund prior to the time of distribution stipulated in the contract, shall be considered in determining the loan and cash and other surrender values provided for by this Act. * * *

It is to be observed that paragraph (5-c) of section 1 of the above cited act applies to precisely the type of policy introduced as Joint Exhibit A and that the portions of the premiums allocated to the "survivorship investment fund" are expressly required to "be carried as a distinct and separate reserve liability of the company for the benefit of the classes of policies from the premium payments on which the sum was accumulated."

In *Standard Life Ins. Co. of America*, 13 B.T.A. 13; affd., 47 Fed. (2d) 218, we set forth at length what constitutes the reserve funds of a life insurance company. In short the reserve funds required by law of a life insurance company are those funds which the company must, pursuant to statute, maintain as a reserve upon the valuation of the policies. The outstanding policies are valued according to their terms as of a particular date and the sum total of such valuations constitutes the reserve funds. Such reserve funds are exclusive of certain liabilities which the company may have and which may be required to be shown in their annual statements. *Massachusetts Mutual Life Ins. Co.* v. *United States*, 56 Fed. (2d) 897; *United States* v. *Boston Ins. Co.*, 269 U.S. 197.

There can be no question in the present case but that the "survivorship investment fund" maintained by the petitioner was a reserve fund required by law. Nor can there be any question but that such a fund constitutes a policy reserve. It constituted a part of the fund that the petitioner was required to have on hand to meet its policy obligations at the end of the 20-year premium payment period. We sustain the petitioner's contention upon this issue. See *Missouri State Life Ins. Co.*, 29 B.T.A. 401; *Standard Life Ins. Co. of America*, *supra; Commissioner* v. *Western Union Life Ins. Co.*, 61 Fed. (2d) 207; *Reserve Loan Life Ins. Co.*, 18 B.T.A. 359.

### Issue No. 4.

The petitioner included as a deduction on its income tax return for 1929 as "interest on indebtedness" certain discounts on premiums in the amount of $1,241.91. In determining the deficiency proposed in the 60-day deficiency notice upon which the petition herein is based the respondent did not disallow said amount as a deduction. He now alleges that he erred in failing to make such disallowance.

In its brief the petitioner does not question the correctness of the respondent's contention upon this issue.

The contention of the respondent is sustained. The evidence fails to show that the $1,241.91 was interest " paid or accrued within the taxable year on its indebtedness " within the meaning of section 203 (a)(8) of the Revenue Act of 1928.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

TRAMMELL concurs in the result.

BLACK, MARQUETTE, MORRIS, and LEECH dissent.