MONARCH LIFE INSURANCE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 86861, 87441. Promulgated October 6, 1938.

*Abbot P. Mills, Esq.*, and *Frederick A. Ballard, Esq.*, for the petitioner.

*R. P. Hertzog, Esq.*, for the respondent.

720

OPINION.

HILL: The first and principal issue in this case is whether respondent erred in disallowing deductions claimed by petitioner representing 3¾ percent of the mean of five certain reserve funds required by law and held by petitioner at the beginning and end of the taxable years, which reserve funds are referred to and described in our findings of fact above.

The Revenue Acts of 1932 and 1934, governing the taxable years, provide in pertinent part as follows:

SEC. 203. NET INCOME OF LIFE INSURANCE COMPANIES.

(a) GENERAL RULE.—In the case of a life insurance company the term "net income" means the gross income less—

\*     \*     \*     \*     \*     \*     \*

(2) RESERVE FUNDS.—An amount equal to 4 per centum of the mean of the reserve funds required by law and held at the beginning and end of the

taxable year, except that in the case of any such reserve fund which is computed at a lower interest assumption rate, the rate of 3¾ per centum shall be substituted for 4 per centum. * * *

The parties have agreed that all the reserve funds involved were required by law; they have also stipulated the amounts of the funds held by petitioner at the beginning and end of the taxable years, and for what purposes they were held. Thus, the issue submitted for decision is narrowed to the single question whether these reserve funds were true insurance reserves, within the meaning of section 203 (a) (2), *supra*, or whether, as apparently contended by respondent, they were liability or solvency reserves, not peculiar to life insurance companies.

In *Maryland Casualty Co.* v. *United States*, 251 U. S. 342, 350, it is said:

The term "reserve" or "reserves" has a special meaning in the law of insurance. While its scope varies under different laws, in general it means a sum of money, variously computed or estimated, which, with accretions from interest, is set aside—"reserved"—as a fund with which to mature or liquidate, either by payment or reinsurance with other companies, future unaccrued and contingent claims, and claims accrued, but contingent and indefinite as to amount or time of payment.

In *Helvering* v. *Inter-Mountain Life Insurance Co.*, 294 U. S. 686, arising under the Revenue Act of 1921, the Court, in defining an insurance reserve, said:

The word "reserve" has many meanings. Accounts creating reserves are set up in almost every line of business and funds evidenced by the book entries are held for many and widely different purposes. As the act does not permit corporations other than insurance companies to make deductions of the kind here under consideration, "reserve funds" may not reasonably be deemed to include values that do not directly pertain to insurance. In life insurance the reserve means the amount, accumulated by the company out of premium payments, which is attributable to and represents the value of the life insurance elements of the policy contracts.

In *Continental Assurance Co.* v. *United States*, 8 Fed. Supp. 474, cited with approval by the Supreme Court in the *Inter-Mountain* case, *supra*, the Court of Claims said:

After a careful study of the nature and purpose of reserves maintained by life insurance companies in the light of all the decisions which have been rendered upon the subject and the plan of taxation of such companies as provided in the federal taxing acts, we conclude: (1) That accrued liabilities are not the subject of the "reserve fund" deductions granted by Congress in any of the revenue acts; (2) that the "reserve" contemplated in the Federal statutes is "that fund which when added to the present value of future net premiums is equal to the present value of future death claims"; that is, the mathematical equivalent of the obligation incurred by the company to pay the sum insured at the death of the policyholder or upon the surrender and cancellation of the policy; (3) that the "reserve" contemplated in the federal

statutes is calculated upon the basis of a selected table of mortality plus an assumed rate of interest; and that reserves not so calculated, whether required by state law or by state officer, are not "reserve funds required by law" within the meaning of the federal statutes; and (4) that the "reserve fund" required by law within the meaning of the federal statutes does not include "solvency" reserves required to be maintained by state law or a state officer to keep the company in sound financial condition.

From the foregoing decisions it appears that the "reserve funds required by law", in respect of which a deduction from gross income is allowed life insurance companies by the taxing acts, include only funds accumulated out of premium payments and "reserved" (1) to mature or liquidate unaccrued and contingent claims, and (2) claims accrued but contingent as to amount or time of payment; and do not include (a) values not directly pertaining to insurance, (b) reserve funds not calculated upon the basis of selected tables of mortality plus an assumed rate of interest, and (c) "solvency" reserves which may be required to keep the company in a sound financial condition.

In order to determine whether petitioner in the present case is entitled to the deductions claimed, we must examine the stipulated facts to ascertain whether the controverted reserve funds come within the limitations above indicated.

Two of the reserve funds involved herein, viz., the additional reserve on noncancelable accident and health policies and the reserve for unpaid and unresisted accident and health claims were considered by this Board in *Equitable Life Assurance Society of the United States*, 33 B. T. A. 708, and there held to be reserves required by law within the meaning of the Revenue Acts of 1924 and 1926, which contain provisions similar to the 1932 and 1934 Acts. Accordingly, in so far as the deficiencies result from the denial of deductions computed on the basis of the two reserve funds just mentioned, respondent's action is reversed and we hold for petitioner on authority of the cited decision.

This leaves for detailed consideration here only the first three reserve funds mentioned in our findings of fact; that is, (1) reserve for incurred disability benefits, (2) reserve for nondeduction of deferred fractional premiums, and (3) reserve for unearned premiums on accident and health policies. Reserves (1) and (2) pertain to life insurance contracts, and reserve (3) relates to accident and health policies.

*Reserve for incurred disability benefits.*—Petitioner's life insurance policies during the taxable years contained a provision that petitioner would waive the payment of premiums by a policyholder on proof of total disability, which waiver would operate only during the continuance of such disability, and petitioner reserved the right to require annual proof of continuance of the disability. This fund rep-

resented a reserve to supply the premiums so waived. The fund was accumulated out of premium payments, including income from investment thereof, and was required by state law. It was calculated on the basis of selected tables of combined mortality and disability, with an assumed interest of $3\frac{1}{2}$ percent.

We think it is plain that the premiums thus waived constituted in effect the payment by petitioner of disability benefits to the same extent as if a totally disabled policyholder had paid the annual premium in full and petitioner had thereupon repaid to the policyholder in cash the amount of the benefits provided for. Hence, this fund was designed to cover future claims that were unaccrued and contingent, since the claims accrued only as the total disability continued and there was no way of ascertaining in a given case how long the disability would in fact continue. In our opinion, petitioner's reserve fund for incurred disability benefits comes squarely within the statute under the interpreting decisions above referred to, and we hold that respondent erred in disallowing the deduction claimed.

*Reserve for nondeduction of deferred fractional premiums.*—This fund was maintained pursuant to state law; was accumulated out of premium payments and income from investment thereof; and was computed on the basis of selected tables of mortality, with assumed interest of $3\frac{1}{2}$ percent. The fund was maintained to supply fractional premiums which might not be received during the policy year of death under a provision that when a policy became payable by the death of the insured any premium necessary to complete the premium payments for the policy year in which death occurred was waived, except that, in the event of the death of the insured during a period of grace, one quarterly premium should be deducted from the amount payable thereunder.

The reserve fund under discussion is similar to the preceding reserve for incurred disability benefits. The claims covered by this reserve were obviously dependent upon the happening of a future contingency, and at the date of computing the reserve were unaccrued, since it could not be known when the insured would die or whether death would occur during the period of grace. Respondent's action in disallowing the deduction computed on the basis of the present reserve is reversed.

*Reserve for unearned premiums on accident and health policies.*— Petitioner wrote during the taxable years two types of accident and health policies, and with respect to both types maintained unearned premium reserves. The unearned premium reserve on any policy is that portion of the current premium which the insurer has not had time to earn, and consequently is the portion of the premium paid

for protection after the date of the reserve statement. In the case of annual premium policies it is ordinarily taken as one-half of the premium on the assumption that policy renewal dates are evenly distributed throughout the year. The unearned premium reserve on any annual premium policy is the amount which, with interest at an assumed rate, will provide funds to pay future claims on such policy.

In computing its unearned premium reserve during the taxable years, petitioner assumed an interest rate of 3½ percent. The fund was derived from premium receipts, and earnings on investment thereof. It was required by state law.

The unearned premium reserve is the basic insurance reserve, and, in the case of a life insurance company, so obviously comes within the term "reserve funds required by law", as used in the taxing statutes and interpreted by the decisions quoted above, that a discussion of that point here seems unnecessary.

Respondent contends, however, that reserves set up to cover accident and health policies are not *in any event* allowable reserves under the statute; that deductions are allowable *only* in respect of reserves maintained for death benefits under life insurance policies.

This is a novel proposition, and we have been unable to find any authority to support it. Section 201 (a) of the Revenue Acts of 1932 and 1934, relating to the tax on life insurance companies, defines the term "life insurance company" as meaning "an insurance company engaged in the business of issuing life insurance and annuity contracts (including contracts of combined life, health, and accident insurance), the reserve funds of which held for the fulfillment of such contracts comprise more than 50 per centum of its total reserve funds." The parties to these proceedings have stipulated that more than 50 percent of petitioner's total reserve funds held during the taxable years were held for the fulfillment of life insurance contracts, and that petitioner was held to be taxable as a life insurance company. If petitioner is taxable as a life insurance company, it must follow that its reserve funds must be treated as reserve funds of a life insurance company. *Equitable Life Assurance Society of the United States, supra*, dealt with reserves on accident and health policies, such as are involved in the present proceedings, and they were there held to be a proper basis for allowable deductions. Respondent's position on this point, we think, can not be sustained, and his action is reversed.

Certain amounts were included in petitioner's reserve for unearned premiums at the beginning and end of the taxable years, with respect to which petitioner now concedes that it is not entitled to the deductions claimed. Such amounts, as stipulated by the par-

ties, are set out in our findings of fact above. The deductions claimed by petitioner will be recomputed in accordance therewith, and as so recomputed we hold to be allowable deductions. Cf. *Mc-Coach* v. *Insurance Co. of North America*, 244 U. S. 585; *Maryland Casualty Co.* v. *United States, supra*; *Travelers Equitable Insurance Co.*, 22 B. T. A. 784.

The second issue presented for decision is whether respondent erred in disallowing amounts claimed by petitioner as deductions for interest, representing discount on premiums paid in advance. Section 203 (a) (8) of the Revenue Acts of 1932 and 1934 permits a life insurance company to deduct from gross income "all interest paid within the taxable year on its indebtedness." Discount allowed by petitioner for prepayment of premiums does not constitute interest paid on its indebtedness within the meaning of the statute, and is not an allowable deduction. *Illinois Life Insurance Co.*, 30 B. T. A. 1160 (reversed on another point, 299 U. S. 88). Respondent's action on this issue is approved.

*Judgments will be entered under Rule 50.*