## COMMISSIONER OF INTERNAL REVENUE v. OREGON MUT. LIFE INS. CO.

### No. 9318.

Circuit Court of Appeals, Ninth Circuit.

June 12, 1940.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Edward H. Horton, Sp. Asst. to Atty. Gen., for petitioner.

Wm. Marshall Bullitt, of Louisville, Ky., Special Counsel, and A. B. Winfree, of Portland, Or., General Counsel, for respondent.

Before GARRECHT, HANEY, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

This is a proceeding to review a decision of the Board of Tax Appeals.

The taxpayer is a mutual life insurance company organized under the laws of Oregon. The question presented is whether its reserves for permanent and total disability benefits, maintained as against disability provisions of its combined life, health, and accident policies, are "reserve funds required by law", within the meaning of § 203(a) (2) of the Revenue Acts of 1932 and 1934, 26 U.S.C.A.Int.Rev. Acts, pages 547, 730, permitting a deduction from gross income of a percentage of the mean of such funds held at the beginning and end of the taxable year.

The taxpayer writes annuity contracts and ordinary life insurance policies, including policies providing for double indemnity. It writes also policies of combined life, health, and accident insurance. It issues no separate disability contracts. All policies are based on the level premium plan.

In the tax years in question (1933 and 1934) the taxpayer's outstanding policies were about equally divided between disability contracts (combined life, health,

and accident), and those providing for no disability benefits. In addition to the payment of death benefits, its disability policies provide that upon proof of the total and permanent disability of the insured before age 60, the company will waive the payment of premiums and pay the insured, during the period of disability, an annual sum equal to one-tenth of the face value of the policy.

In order to meet its liabilities under the disability provisions of this type of policy, the taxpayer carries two reserves which for convenience are referred to as "active life reserve" and "disabled life reserve". The "active life reserve" is held to meet contingent liabilities under policies whose holders have not become disabled. As an active life becomes disabled, the taxpayer creates out of the active life reserve its "disabled life reserve", to enable it to pay disability benefits during the continuance thereof. There is no duplication in the two reserves. The amount of reserves necessary to cover future liabilities under the disability provisions is determined by reference to combined mortality and disability tables.

During the years in question the mean of the reserves maintained by the taxpayer for death benefits only, on both non-disability and disability policies, was in excess of $9,500,000. The right to a deduction based on these reserves is not disputed.

In the two years, while being somewhat larger during the second, the mean of the reserves for disability benefits was roughly $110,000 for active lives, and somewhat in excess of that sum for disabled lives. It is conceded that these reserves are re-

quired by law. The Commissioner urges that they were not held against life insurance risks and therefore could not properly be used as a basis for deduction. The Board held the contrary.

In so holding the Board relied upon its previous decisions in Equitable Life Assur. Soc. v. Commissioner, 33 B.T.A. 708; Monarch Life Ins. Co. v. Commissioner, 38 B.T.A. 716; and Pan-American Life Ins. Co. v. Commissioner, 38 B.T.A. 1430, recently affirmed by the Fifth Circuit in 111 F.2d 366, decided April 20, 1940. Opposed to this view is a decision of the Court of Claims in New World Life Ins. Co. v. United States, 26 F.Supp. 444, certiorari granted, 60 S.Ct. 1070, 84 L.Ed. ——, May 20, 1940.

■ The pertinent revenue acts impose a tax upon the net income of life insurance companies. § 201 (b) (1)[1] Gross income of such companies is the amount of income received during the taxable year from interest, dividends, and rents. § 202(a), 26 U.S.C.A.Int.Rev.Acts, page 546. Net income is defined by § 203 as the gross income less certain deductions, the pertinent deduction being that prescribed by subdivision (a) (2) of the section, namely, "an amount equal to 4 per centum of the mean of the reserve funds required by law and held at the beginning and end of the taxable year, except that in the case of any such reserve fund which is computed at a lower interest assumption rate, the rate of 3¾ per centum shall be substituted for 4 per centum. * * * "[2]

It is settled that the words "reserve funds", as here used, do not embrace mere solvency reserves.[3] "As the act does not permit corporations other than insurance

---

[1] Citations refer to the Revenue Act of 1932, c. 209, 47 Stat. 169, 223–227, 26 U.S.C.A.Int.Rev.Acts, page 546. The corresponding provisions of the Revenue Act of 1934, also involved, are identical with those of the 1932 act, 26 U.S.C.A. Int.Rev.Acts, page 730.

[2] Life insurance companies, whether stock or mutual, are taxable on their investment income only. Prior to the Revenue Act of 1921 all insurance companies were taxable as ordinary corporations, hence their gross income included premium income as well as income from investments. However, all companies were allowed a deduction (similar to that now granted mutual companies other than life) of the "net addition required by law to be made within the taxable year to

reserve funds". For a discussion of the changes made by the 1921 Act in the methods of taxing insurance companies, see New York Life Ins. Co. v. Bowers, 283 U.S. 242, 51 S.Ct. 399, 75 L.Ed. 1005; Natl. Life Ins. Co. v. United States, 277 U.S. 508, 522, 48 S.Ct. 591, 72 L.Ed. 968 (dissenting opinion); Massachusetts Mutual Life Ins. Co. v. United States, Ct.Cl., 56 F.2d 897, 901; Commissioner v. Pan-American Life Ins. Co., 5 Cir., 111 F.2d 366, decided April 20, 1940.

[3] McCoach v. Ins. Co. of No. America, 244 U.S. 585, 37 S.Ct. 709, 61 L.Ed. 1333 (reserve held by a fire and marine insurance company to cover accrued but unsettled claims); Maryland Casualty Co. v. United States, 251 U.S. 342, 40 S.Ct. 155,

companies to make deductions of the kind here under consideration, 'reserve funds' may not reasonably be deemed to include values that do not directly pertain to insurance." Helvering v. Inter-Mountain Life Ins. Co., 294 U.S. 686, 690, 55 S.Ct. 572, 574, 79 L.Ed. 1227.

Although it is clear that the statute refers to technical insurance reserves only—that is, reserves computed upon the basis of probability tables and an assumed rate of interest—the precise question before us is whether the deduction is confined to technical life reserves. We think the question has not been answered in the decisions of the Supreme Court.

■ Considerable light is thrown on the problem by the provisions of § 201 (a) of the act, 26 U.S.C.A.Int.Rev.Acts, page 546. A life insurance company is there defined as "an insurance company engaged in the business of issuing life insurance and annuity contracts (including contracts of combined life, health, and accident insurance), the reserve funds of which held for the fulfillment of such contracts comprise more than 50 per centum of its total reserve funds".

As applied, for example, to this taxpayer, the Commissioner construes the statute as meaning that the determinative ratio is between the non-disability elements of the company's reserves and a total comprising these plus the reserves held for the fulfillment of the disability features of its combined policies.

The statute, however, says that the reserve funds which are to be compared with the total shall comprise reserves held "for the fulfillment of such contracts"—namely, the contracts enumerated. These expressly include "contracts of combined life, health, and accident insurance". For the purpose of classification, the disability reserves held against the combined policies are treated by the act as life insurance reserves. Neither the Commissioner nor the court is at liberty to disregard the plain language of the section on the theory that the classification lacks philosophical basis. It must be borne in mind that we are dealing with a statute, not with an actuarial problem.

Since the words "reserve funds", as used in the classification statute, embrace disability reserves held against combined life and disability policies, we see no persuasive reason to believe that they should be held to mean less than that when used in § 203(a) (2). Had Congress intended a narrower application of the term for the purpose of the deduction, presumably it would have said so in apt language. The words "reserve funds required by law", used in the latter section, unquestionably refer to technical insurance reserves. But we think, as in § 201(a), they comprehend reserves held to meet a life insurance company's obligations dependent either upon life contingencies or upon life and disability contingencies. The provision contained in the last sentence of § 203(a) (2) tends strongly to support this view.[4]

---

64 L.Ed. 297 (reserve for taxes, salaries, reinsurance, and unpaid brokerage); United States v. Boston Ins. Co., 269 U. S. 197, 46 S.Ct. 97, 70 L.Ed. 232 (reserve held by fire and marine insurance company to cover accrued but unsettled claims); New York Life Ins. Co. v. Edwards, 271 U.S. 109, 46 S.Ct. 436, 70 L. Ed. 859 (reserve to meet death losses, accrued but unreported); Helvering v. Inter-Mountain Life Ins. Co., 294 U.S. 686, 55 S.Ct. 572, 79 L.Ed. 1227 (reserve against matured, unsurrendered and unpaid coupons left with company to accumulate at interest); Helvering v. Illinois Life Ins. Co., 299 U.S. 88, 57 S. Ct. 63, 81 L.Ed. 56 (survivorship investment funds). See also Massachusetts Mut. Life Ins. Co. v. United States, Ct. Cl., 56 F.2d 897 (reserves for dividends left with company to accumulate at interest and accrued interest thereon; for dividends or other profits due policyholders, including those contingent upon payment of outstanding and deferred premiums; for dividends declared on or apportioned to annual dividend policies, whether or not contingent upon payment of renewal premiums; and for policy claims—paid-for basis); Continental Assur. Co. v. United States, Ct.Cl., 8 F. Supp. 474 (reserve against matured, unsurrendered and unpaid coupons left with company to accumulate at interest).

4 "Life insurance companies issuing policies covering life, health, and accident insurance combined in one policy issued on the weekly premium payment plan, continuing for life and not subject to cancellation, shall be allowed, in addition to the above, a deduction of 3¾ per centum of the mean of such reserve funds (not required by law) held at the beginning and end of the taxable year, as the Commissioner finds to be necessary for the protection of the holders of such policies only."

As was pointed out in the opinion of the Fifth Circuit in Pan-American Life Insurance Co. v. Commissioner, supra, the construction given the act by the Board and here approved is supported by thirteen years of administrative practice involving five successive revenue acts.

Affirmed.

