### COMMISSIONER OF INTERNAL REVENUE v. MONARCH LIFE INS. CO.

### MONARCH LIFE INS. CO. v. COMMISSIONER OF INTERNAL REVENUE.

**Nos. 3470, 3475.**

Circuit Court of Appeals, First Circuit.

**Aug. 15, 1940.**

Edward H. Horton, Sp. Asst. to the Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Sp. Asst. to the Atty. Gen., on the brief), for Commissioner of Internal Revenue.

Abbot P. Mills, of Washington, D. C. (Frederick A. Ballard, of Washington, D. C., Gurdin W. Gordon, of Springfield, Mass., and Underwood, Mills & Kilpatrick, of Washington, D. C., on the brief), for Monarch Life Ins. Co.

Paul F. Myers and James Craig Peacock, both of Washington, D. C., amici curiae.

Before MAGRUDER and MAHONEY, Circuit Judges, and FORD, District Judge.

MAHONEY, Circuit Judge.

This is a petition to review a decision of the Board of Tax Appeals reported in 1938, 38 B.T.A. 716 and is before this court on a petition filed by the Commissioner of Internal Revenue, and upon a cross-petition filed by the Monarch Life Insurance Company. The controversy relates to income taxes for the calendar years 1933 and 1934.

The question involved in the Commissioner's petition for review is whether

certain reserve funds held by the taxpayer pursuant to state law were "reserve funds required by law" within the meaning of Section 203(a) (2) [1] of the Revenue Acts of 1932 and 1934, 47 Stat. 224, 48 Stat. 732, 26 U.S.C.A. Internal Revenue Acts, pages 547, 730, entitling the taxpayer to a deduction from gross income. Although the reserves in question are admittedly set aside as reserves and required by the various state laws, the Supreme Court has held that in order to come within the meaning of "reserve funds required by law" as used in Section 203(a) (2) the reserves must pertain to insurance in contradistinction to "solvency" or ordinary business reserves. Helvering v. Illinois Life Insurance Co., 1936, 299 U.S. 88, 57 S.Ct. 63, 81 L.Ed. 56; Helvering v. Inter-Mountain Life Insurance Co., 1935, 294 U.S. 686, 55 S.Ct. 572, 79 L.Ed. 1227; Maryland Casualty Co. v. United States, 1920, 251 U.S. 342, 40 S.Ct. 155, 64 L.Ed. 297. The reserves in the instant case must satisfy this restricted meaning in order to be deductible.

The taxpayer's petition presents the question whether the Board was in error in determining that the discount allowed by the taxpayer on premiums on life insurance paid in advance of their due dates does not constitute interest paid on indebtedness within the meaning of Section 203(a) (8) [2] of the Revenue Acts of 1932 and 1934, 26 U.S.C.A.Int.Rev.Acts, pages 548, 732. The pertinent provisions of both of these acts, though of different years, are identical in terms, and the questions raised under each act are identical, only the amounts in controversy being different. .

The facts were stipulated and the Board found as follows:

The Monarch Life Insurance Company, taxpayer herein, is a corporation organized and existing under the laws of the State of Massachusetts, having its home office in Springfield, Massachusetts. It was organized December 31, 1931, to take over the business of the Monarch Accident Insurance Company, which was organized in 1921, and the Monarch Life Insurance Company, which was organized in 1926, both under the laws of the State of Massachusetts. The taxpayer was licensed to write life, accident and health insurance contracts, and was so engaged during 1933 and 1934, the taxable years herein involved, in the State of Massachusetts as well as in 23 other states and the District of Columbia.

More than 50 per cent of taxpayer's total reserve funds held during the taxable years were held for the fulfillment of life insurance contracts, and taxpayer was held to be taxable as a life insurance company, as defined in Section 201(a) of the respective Acts, 26 U.S.C.A. pages 546, 729.

For the taxable years the taxpayer filed separate statements for its life insurance business and for its accident and health insurance business, with the Commissioner of Insurance for the State of Massachusetts. These reports were required by chapter 175, section 25, of the General Laws of Massachusetts, and they were in the form adopted by the National Convention of Insurance Commissioners.

During the taxable years taxpayer maintained the following reserves which it

---

[1] Section 203. Net Income of Life Insurance Companies

(a) General Rule. In the case of a life insurance company the term "net income" means the gross income less—

* * * * * *

(2) Reserve funds. An amount equal to 4 per centum of the mean of the reserve funds required by law and held at the beginning and end of the taxable year, except that in the case of any such reserve fund which is computed at a lower interest assumption rate, the rate of 3¾ per centum shall be substituted for 4 per centum. Life insurance companies issuing policies covering life, health, and accident insurance combined in one policy issued on the weekly premium payment plan, continuing for life and not subject to cancellation, shall be allowed, in addition to the above, a deduction of 3¾ per centum of the mean of such reserve funds (not required by law) held at the beginning and end of the taxable year, as the Commissioner finds to be necessary for the protection of the holders of such policies only; . . .

[2] Section 203 (a) (8) Interest. All interest paid or accrued within the taxable year on its indebtedness, except on indebtedness incurred or continued to purchase or carry obligations or securities (other than obligations of the United States issued after September 24, 1917, and originally subscribed for by the taxpayer) the interest upon which is wholly exempt from taxation under this title.

claims were insurance reserves required by law, but which the Commissioner asserts were not insurance reserves within the meaning of Section 203(a) (2) of the Revenue Acts of 1932 and 1934, respectively:

**1933**

| Life Statement | Dec. 31, 1932 | Dec. 31, 1933 |
|---|---|---|
| Page 5, item 9—Reserve for incurred disability benefits.... | 3,843.00 | 4,467.00 |
| Page 5, item 36—Reserve for nondeduction of deferred fractional premiums......... | 3,050.00 | 3,600.00 |
| **Accident and Health Statement** | | |
| Page 5, item 25—Unearned premium reserve on accident and health policies......... | 395,800.00 | 350,519.14 |
| Page 5, item 25½—Additional reserve on noncancellable accident and health policies | 123,000.00 | 124,700.00 |
| Page 5, item 19—Reserve for unpaid and unresisted claims | 264,632.00 | 180,539.23 |
| | 790,325.00 | 663,825.37 |
| | | 790,325.00 |
| | | 1,454,150.37 |
| Mean of reserves disallowed... | | 727,075.19 |
| 3¾% of mean, deducted on return but disallowed by respondent ..................... | | 27,265.32 |

**1934**

| Life Statement | Dec. 31, 1933 | Dec. 31, 1934 |
|---|---|---|
| Page 5, item 9—Reserve for incurred disability benefits.. | 4,467.00 | 7,102.00 |
| Page 5, item 36—Reserve for non-deduction of deferred fractional premiums ......... | 3,600.00 | 4,430.00 |
| **Accident and Health Statement** | | |
| Page 5, item 25—Unearned premium reserve on accident and health policies........... | 350,519.14 | 365,819.00 |
| Page 5, item 25½—Additional reserve on noncancellable accident and health policies... | 124,700.00 | 131,492.00 |
| Page 5, item 19—Reserve for unpaid and unresisted claims | 180,539.23 | 213,839.39 |
| | 663,825.37 | 722,682.39 |
| | | 663,825.37 |
| | | 1,386,507.76 |
| Mean of reserves disallowed... | | 693,253.88 |
| 3¾% of mean, deducted on return but disallowed by respondent ..................... | | 25,997.02 |

During the years in question, the taxpayer maintained the above-described reserves as insurance reserves required by law. The Commissioner contends that they are not insurance reserves within the meaning of Section 203(a) (2) of the Revenue Acts of 1932 and 1934, and re- fused to allow the taxpayer to deduct 3¾ per cent of the mean of these reserve funds according to Section 203(a) (2). The Board of Tax Appeals held that these reserve funds were within the meaning of Section 203(a) (2) and reversed the action of the Commissioner in disallowing the deductions. The Commissioner has petitioned for review.

The parties have agreed that the reserve funds involved were required by state law, and they have also stipulated the amounts of the funds held by the taxpayer at the beginning and end of the taxable years, and for what purposes they were held. The questions remaining on the petition of the Commissioner are only two: Are these reserves technical insurance reserves? Must reserves be technical life insurance reserves in order to come within the deduction allowed by Section 203(a) (2)?

The first question is whether the reserves are technical insurance reserves. The cases which discuss the question of reserves, under various forms of insurance, set up definite requirements for a technical insurance reserve. It must pertain directly to insurance and be calculated upon the basis of an experience or actuarial table applicable to the nature of the risk involved, with an interest assumption involved in the calculation. It must be set up and maintained out of premiums and earnings from the investment thereof, and be maintained for the purpose of maturing and liquidating, either by payment or reinsurance with other companies, future, unaccrued and contingent claims. Helvering v. Inter-Mountain Life Insurance Co., supra; United States v. Boston Insurance Co., 1925, 269 U.S. 197, 46 S.Ct. 97, 70 L.Ed. 232; Maryland Casualty Co. v. United States, supra; McCoach v. Insurance Co. of North America, 1917, 244 U.S. 585, 37 S.Ct. 709, 61 L.Ed. 1333; Continental Assurance Co. v. United States, Ct. Cls., 1934, 8 F.Supp. 474; Minnesota Mutual Life Insurance Co. v. United States, 1928, 66 Ct.Cls. 481, certiorari denied, 1929, 279 U.S. 856, 49 S.Ct. 352, 73 L.Ed. 998.

It is stipulated that the reserve funds in the instant case were computed upon the basis of experience or actuarial tables; that an interest assumption was involved; and that the reserves were set up and maintained out of premiums. Though the stipulated facts in regard to the additional

reserve for noncancellable health and accident policies are slightly ambiguous on these points, it is clear that the reserve is set up from premiums and based on experience tables with an assumed rate of interest. See Massachusetts Protective Association, Inc. v. United States, 1 Cir., August 6, 1940, 114 F.2d 304.

All that remains to make these reserve funds technical insurance reserves is to show that they directly pertain to insurance, and were set aside and maintained for the purpose of maturing and liquidating either by payment or reinsurance with other companies, future, unaccrued and contingent claims.

Reserve for Incurred Disability Benefits.—Taxpayer's life insurance policies during the taxable year contained a provision that taxpayer shall waive the payment of premiums by a policyholder on proof of total disability, which waiver shall operate only during the continuance of such disability, taxpayer reserving the right to require annual proof of such continuance. Inasmuch as taxpayer's premium rates, and other reserves, are computed upon the assumption that the stated full year's premium will continue to be received when due during the life of the policy, the reserve for the incurred disability benefits (item 9, page 5, of "Life Statements") represented a fund maintained to supply, during continuance of disability, the premiums thus to be waived. It was required during the taxable years pursuant to statutory authority by the Insurance Department of the State of New York, where taxpayer was licensed and transacted business. This reserve was held during the taxable years. It was calculated upon the basis of selected tables of combined mortality and disability, with assumed interest of $3\frac{1}{2}$ per cent. The source of the reserve was premium payments and income from the investment thereof.

The Commissioner contends that this is not a technical insurance reserve because, he says, it is maintained to pay claims which have already accrued or matured. The reserve is set up to insure against the continuance of the total disability by providing a fund to supply the premiums to be waived during the continuance of the disability. In order to receive the benefit of the waiver, the insured must be alive and totally disabled at the time a premium becomes due; and the waiver is contingent upon fulfillment of these conditions.

The claim is not accrued because, though the disability has been incurred, the continuance of the disability is uncertain, and thus the waiver is contingent. The extent of the probable liability and the amount of the reserve created are fixed by reference to mortality and disability tables plus an assumed interest rate. When the premium becomes due and total disability exists, the premium is paid out of the reserve and is no longer a part of the reserve. It is clear that the reserve is held by the taxpayer against claims of insurance that are "future", "unaccrued", and "contingent". It is a true technical insurance reserve. Commissioner v. Oregon Mutual Life Insurance Co., 9 Cir., 1940, 112 F.2d 468; Commissioner v. Pan-American Life Insurance Co., 5 Cir., 1940, 111 F.2d 366; cf. Equitable Life Assurance Society v. Comm. of Int. Rev., 1935, 33 B.T.A. 708.

Reserve for Nondeduction of Deferred Fractional Premiums.—Taxpayer's life insurance policies during the taxable years contained a provision that when the policy shall become payable by the death of the insured any premium necessary to complete premium payments for the policy year in which such death occurs is waived, except that, in the event of the death of the insured during a period of grace, one quarterly premium shall be deducted from the amount payable thereunder. The reserve for nondeduction of deferred fractional premiums (item 36, page 5 of "Life Statements") represented a fund maintained to supply the fractional premiums which may thus not be received during the policy year of death. It was required pursuant to statutory authority by the Commissioner of Insurance of the State of Massachusetts, as well as by the insurance departments of other states in which petitioner was likewise licensed and transacted business. The reserve was held during the taxable years, and was computed, with assumed interest of $3\frac{1}{2}$ per cent, on the basis of selected tables of mortality. The source of the reserve was premium payments and income from the investment thereof.

This reserve is similar to that for incurred disability benefits. The claims against which this reserve is maintained do not arise until the death of the insured and thus are dependent upon the happen-

ing of a future contingency. The premiums due, if any, are paid from the reserve when the policy matures at death. Since it cannot be known when the insured will die or whether death will occur during a period of grace, any claims against the reserve at the date of the computation are unaccrued and must be figured on the basis of experience tables and assumed interest. The reserve is set up to meet "future", "unaccrued", and "contingent" insurance claims and is a technical insurance reserve.

■ Reserve for Unearned Premiums on Accident and Health Policies.—Taxpayer wrote during the taxable years two types of accident and health policies—one a policy which may be cancelled at any time by taxpayer; the other a policy which (in the absence of fraud) cannot be cancelled by taxpayer as long as premiums are paid. The cancellable policies on certain forms provided for indemnities for specified injuries occurring by accidental means; another form provided likewise for loss of time by sickness. The noncancellable policies provided on certain forms indemnities for specified injuries or loss of time occurring through accidental means or through sickness; another form provided for such losses occurring through accidental means only.

With respect to both types of policy, taxpayer maintained during the taxable years unearned premium reserves. The unearned premium reserve on any policy is the portion of the current premium which taxpayer has not had time to earn, and which is consequently paid for protection after the date of the statement. In the case of annual premium policies it is ordinarily taken as one-half the premium on the assumption that policy renewal dates are evenly distributed throughout the year.

The unearned premium reserve on any annual premium policy accordingly represents one-half the current premium, the amount of which premium is so fixed that it will, when improved with interest at an assumed rate, provide funds to pay future claims on such policy. In computing the unearned premium reserve during the taxable years, interest was assumed to be 3½ per cent. The source of this reserve is thus premium receipts and earnings on the investment thereof.

Taxpayer was required to maintain this reserve as above described, during the taxable years, by the Massachusetts Insurance Laws (General Laws of Massachusetts, ch. 175, sec. 10); and by the New York Insurance Laws, Consol.Laws, c. 28, sec. 86(2) A. The reserve was held as so required by state law, in the amounts set out above.

The following amounts, included in this reserve at the beginning and end of each year, represented advance premiums:

| 1933 | | 1934 | |
|---|---|---|---|
| December 31, 1932 | 6,306.99 | December 31, 1933 | 4,536.07 |
| December 31, 1933 | 4,536.07 | December 31, 1934 | 5,608.24 |
| Mean | 5,421.53 | Mean | 5,072.16 |
| 3¾% of mean | 203.31 | 3¾% of mean | 190.21 |

With respect to these amounts, taxpayer concedes that it is not entitled to the deduction claimed.

This reserve has long been recognized as the basic insurance reserve, representing as it does the amount of the premium collected proportionate to the unexpired part of the period for which it was paid. The entire premium is based on experience tables and an assumed rate of interest. This pro rata unearned portion of the premium collected is clearly a technical insurance reserve pertaining to insurance and held against "future", "unaccrued", and "contingent" claims. Maryland Casualty Co. v. United States, supra; Massachusetts Protective Association, Inc. v. United States 1 Cir., August 6, 1940, 114 F.2d 304.

■ Additional Reserve on Noncancellable Accident and Health Policies.— The two types of accident and health policy issued by taxpayer during the taxable years, cancellable and noncancellable, are described above. Because of the noncancellable feature of the latter type of policy, it may be continued by the insured until he reaches the age of seventy. By reason of the increasing age of such an insured, the risk of disability within the scope of the contract increases likewise, assuming the continuance of the policy. The premium is, however, kept level throughout the duration of the contract (subject to a contractual increase at the age of fifty on certain forms). Consequently the premium rates must be so fixed, in excess of those applicable to cancellable policies, that such accumulated excess accrued during the early years of such contracts, with assumed interest at 3½ per cent, will provide a fund, which constitutes the reserve in question, the purpose of

which is to meet the excess of claim costs over premium receipts during the later years. This reserve was held, as required by state laws, during the taxable years, in the amounts set out above.

This reserve has been discussed at length in Massachusetts Protective Association, Inc., v. United States, supra. Though the exact point there decided was that such reserve constitutes "unearned premiums" within Section 246(b) (5) of the Revenue Act of 1926, 26 U.S.C.A.Int. Rev.Acts, page 195, the opinion clearly shows that the reserve pertains to the satisfaction of insurance claims of noncancellable health and accident policies when the premiums collected are not sufficient to pay the expected costs of the insurance computed by the experience tables. The reserve is obviously set up to meet the payment of "future", "unaccrued", and "contingent" claims.

The Commissioner maintains that the additional reserve for noncancellable health and accident policies is not a technical insurance reserve fund required by law, and is not made up of unearned premiums, but is a pure solvency reserve, and, therefore, not deductible. That position is untenable. The reserve here in question is computed on the basis of insurance experience, pertains directly to insurance, and is a sum set aside from premiums and built up by interest to meet future unaccrued and contingent claims on existing insurance. It thus falls within the definitions of a technical insurance reserve fund given by the cases cited above. The Commissioner has previously conceded this reserve to be a reserve fund required by law within the meaning of the statute. Equitable Life Assurance Society v. Comm. of Int. Rev., supra; cf. Commissioner v. Oregon Mutual Life Insurance Co., 9 Cir., 1940, 112 F.2d 468; Commissioner v. Pan-American Life Insurance Co., 5 Cir., 1940, 111 F.2d 366.

▆ Reserve for Unpaid and Unresisted Claims.—This reserve was maintained by taxpayer during the taxable years in order to provide funds to liquidate future liabilities under both the cancellable and noncancellable accident and health policies, above described, which liabilities are with respect to periodic benefits that will become payable to policyholders disabled at the date of the reserve computation, if such policyholders continue disabled. The reserve as here claimed by taxpayer, accordingly represents the present value of all benefits not yet accrued at the date of valuation, arising from disabilities already incurred, which benefits will be paid in the future if the disabled insured survives and remains disabled.

The amount of the reserve is calculated upon the basis of selected tables of mortality and disability, with an assumed rate of interest taken to be 3½ per cent during the taxable years. A disabled policyholder is not entitled to receive benefits here in question unless he survives and continues disabled during stipulated successive future periods. The source of the funds set aside in this reserve is premium receipts, and earnings upon investment thereof. This reserve was held, according to state laws, during the taxable years in the amounts set out above.

The additional reserve on noncancellable accident and health policies and the reserve for unearned premiums on accident and health policies relate to disabilities which may arise in the future. On the other hand, the portion of the reserve for unpaid and unresisted claims which is being claimed in this case relates only to disabilities which have occurred but still entail liability for future payments if the disabled policyholders survive and continue disabled. In connection with the computation of the latter reserve no part of that portion of the premium payments which has been added to such reserve is included in either the reserve for unearned premiums or the additional reserve on noncancellable accident and health policies. Each of these three reserves is complementary to the other two, and none in any way duplicates either of the others.

While the company is liable to pay benefits for disabilities already incurred it must only do so if the insured survives the scheduled date of payment and remains disabled. The amount necessary to be set aside and improved by interest to satisfy these expected but contingent claims can only be determined by the use of combined mortality and disability tables. (The disability benefits covered by this reserve do not include any amounts for benefits which have already accrued.) This reserve is held against possible claims which are "future", "unaccrued", and "contingent", and it clearly pertains to insurance against the continuance of an incurred disability. It is a technical insurance reserve. Commissioner v. Pan-American Life Insur-

ance Co., supra; Equitable Life Assurance Society v. Comm. of Int. Rev., supra.

 The reserves in question fulfill all the requirements of the various definitions of a technical insurance reserve fund required by law. They also comply with the general definition set forth in Regulations 86, Section 203(a) (2)-1 (1935). However, in Regulations 86, the incurred disability reserve is given as an example of what is not included in the term. Prior administrative practice had long considered the reserves involved in the instant case to be technical insurance reserves required by law within the applicable sections of the respective revenue acts since 1921, e. g., Regulations 77, 74, Art. 971; Regulations 69, 65, 62, Art. 681. Such long administrative interpretation coupled with re-enactment of the statutory language so interpreted should not be lightly set aside. See Haggar v. Helvering, 1940, 308 U.S. 389, 60 S.Ct. 337, 84 L.Ed. 340; Helvering v. Wilshire Oil Co., 1939, 308 U.S. 90, 100, 60 S.Ct. 18, 84 L.Ed. 101; Alaska Steamship Co. v. United States, 1933, 290 U.S. 256, 262, 54 S.Ct. 159, 78 L.Ed. 302; Edward's Lessee v. Darby, 1827, 12 Wheat. 206, 210, 6 L.Ed. 603. The regulations were not changed to exclude these reserves until 1935. (Regulations 86, approved Feb. 11, 1935.) Thus for thirteen years, the administrative practice supported the taxpayer's contention. The Commissioner should not now be permitted to apply retroactively against the petitioner any new regulations made after the tax years in question, particularly after Congressional re-enactment under the previous regulations. Helvering v. R. J. Reynolds Tobacco Co., 1939, 306 U.S. 110, 59 S.Ct. 423, 83 L.Ed. 536; Commissioner v. Pan-American Life Insurance Co., supra.

 We do not agree with the contention of the Commissioner that these are "solvency" reserves. In a sense, all insurance reserves are solvency reserves in that they contribute to and safeguard the financial integrity and stability of the company. But the reserves which the courts have denominated "solvency" reserves and not deductible are sums set up to pay losses, or known, liquidated claims, and ordinary business expenses to which every business is subject. Maryland Casualty Co. v. United States, supra; McCoach v. Insurance Co. of North America, supra. Such reserves have no connection with insurance nor do the reserves for accrued but unpaid dividend coupons and like liquidated sums which were held to be "solvency" reserves in Helvering v. Illinois Life Insurance Co., supra, Helvering v. Inter-Mountain Life Insurance Co., supra, Continental Assurance Co. v. United States, supra, and Minnesota Mutual Life Insurance Co. v. United States, supra. The reserves in this case are held for insurance obligations designed to protect the insured. Clearly, they are technical insurance reserves and not mere "solvency" reserves to pay ordinary non-insurance claims.

The Commissioner contends further, however, that 3¾ per cent of the mean of even a technical insurance reserve is not deductible under Section 203(a) (2) of the Revenue Acts of 1932 and 1934 unless it is a life insurance reserve, i. e., maintained for death benefits under life insurance policies. This interpretation was never put forward until 1934, thirteen years after the first enactment and administrative interpretation of the statute which was many times re-enacted. It has been rejected in Commissioner v. Oregon Mutual Life Insurance Co., supra, Commissioner v. Pan-American Life Insurance Co., supra, and Equitable Life Assurance Society v. Comm. of Int. Rev., supra. It has been accepted only in New World Life Insurance Co. v. United States, Ct.Cls.1939, 26 F.Supp. 444, certiorari granted, May 20, 1940, 60 S.Ct. 1070, 84 L.Ed. 1419. We believe the contention to be insupportable.

The statutory system is conclusive against the Commissioner. Section 201(a) of the Revenue Acts here in question defines life insurance companies as: "an insurance company engaged in the business of issuing life insurance and annuity contracts (including contracts of combined life, health, and accident insurance), the reserve funds of which held for the fulfillment of such contracts comprise more than 50 per centum of its total reserve funds". It is agreed that the taxpayer is a life insurance company within the terms of this definition.

 This section provides a test by which one is to ascertain whether a given company is to be taxed as a life company or as a mutual company or one other than life or mutual. Once a company has been found to be a life insurance company under this definition, the type of its policies is no longer important; all its business is treated as though it were life insurance.

324

Under Section 202(a) (1), 26 U.S.C.A. Int.Rev.Code, a "life insurance" company includes ·in its "gross income", the gross amount of income received from interest, dividends, and rents, not only from its life insurance contracts, but also from its casualty contracts. No contention is made by the Commissioner that only the income from life insurance investments· should be included, though he presses upon the court the contention that the only exclusion allowed from gross income is the interest credited to life insurance reserves required by law, notwithstanding the general language of Section 203(a) (2). .Such a contention is manifestly unfair.

Prior to 1921, all insurance companies, both life and casualty, were taxed as other corporations and were required to report all income, including premium income, as gross income. Since much of the premium income must be set aside in technical insurance reserves, and, therefore, is unavailable to the company for general use, a special deduction was given to insurance companies of ·the annual net addition to reserve funds required by law. See e. g. Section 234(a) (10), Revenue Act of 1918 (40 Stat. 1079). This system gave rise to much litigation, particularly in regard to life insurance companies, as income from premiums was really not true income of the company. Massachusetts Mutual Life Insurance Co. v. United States, Ct.Cls.1932, 56 F.2d 897; National Life Insurance Co. v. United States, 1928, 277 U.S. 508, 522, 48 S.Ct. 591, 72 L.Ed. 968, Brandeis, J., dissenting.

A new system was set up in the Revenue Act of 1921, § 242 et seq., 42 Stat. 261 et seq., requiring life insurance companies, as· defined in the act, to report only their interest, dividends, and rents, and not their premium income. As premiums were no longer included in income of life insurance companies, they were no longer entitled to exclude from gross income the entire amount set aside out of premiums in the reserve funds, but were limited to excluding that portion of reported income which was added to the reserves as interest. See National Life Insurance Co. v. United States, supra, 277 U.S. at page 525, 48 S.Ct. 591, 72 L.Ed. 968. Since this interest was required by law to be credited to the reserves, Congress allowed this deduction "as a necessary compensation for earnings foregone by compliance with the law".

Commissioner v. Pan-American Life Insurance Co., supra; Massachusetts Mutual Life Insurance Co. v. United States, supra.

 The essential system of taxing only "earned premiums" or "earned income" was in no way altered by the different methods of taxation provided for in the Revenue Act of 1921. Utah Home Fire Insurance Co. v. Commissioner, 10 Cir., 1933, 64 F.2d 763, certiorari denied, 1933, 290 U.S. 679, 54 S.Ct. 103, 78 L.Ed. 586. The net result of the changes in so far as here relevant is that when premiums are included in gross income, the addition to the "unearned" portion set aside in reserve funds required by law are deductible to arrive at net income, and when only the income from premium investments are included in gross income, only the interest added to the reserve funds required by law is deductible to arrive at net income. Cf. Massachusetts Mutual Life ·Insurance Co. v. United States, supra.

 The test is not whether the amount credited to the reserve "belongs" to the company or to the insured, but whether it is that sort of gross income · which Congress considered should be ·treated as net income for taxation purposes. This depends on whether the income is available for the general purposes of the company. Maryland Casualty Co. v. United States, supra. Amounts set aside in reserve funds, whether life or casualty reserves, are not so available and, therefore, are to be deducted from gross income. "Reserve funds required by law" included reserves other than life reserves prior to the Revenue Act of 1921, and meant all technical insurance reserves. United States v. Boston Insurance Co., supra; Maryland Casualty Co. v. United States, supra; McCoach v. Insurance Co. of North America, supra. The Revenue Act of 1921 and all later acts, in adopting this language, adopted its established meaning. Massachusetts Mutual Life Insurance Co. v. United States, supra. Therefore, the respondent is en-· titled to deduct from its reported gross investment income, both from life and casualty contracts, 3¾ per cent of the mean of its technical insurance reserves, both for life and casualty policies.

The taxpayer is entitled to a deduction for interest paid on all its technical insurance reserves, as are companies writing nothing but life insurance, since it is taxed

on the same income and since the reserves are set up exactly as are life insurance reserves. Allowing the deduction of 3¾ per cent of the mean of the reserves held both for life and casualty insurance is merely the converse of the decision in Travelers Equitable Insurance Co. v. Comm. of Int.Rev., 1931, 22 B.T.A. 784. In that case, the company wrote both life and casualty insurance. Less than fifty per cent of its technical insurance reserves were held for life insurance contracts, and therefore, it was taxed as an insurance company other than life or mutual under Sections 246 and 247 of the Revenue Acts of 1921, 42 Stat. 262, 263, and 1924, 26 U.S. C.A. Int.Rev.Acts, pages 48, 49. The Board held that the net addition to the reserves held for life insurance contracts could be deducted as "unearned premiums" in computing the net income of the company. The Commissioner acquiesced in this decision X-2 C.B. 71 (1931). In this way, the entire income of a company writing both life and other types of insurance is classified and taxed as though it were entirely composed of that type which is predominant in its business.

While certain language in Helvering v. Illinois Life Insurance Co., supra, appears to sustain the Commissioner's contention that the reserves must be technical life insurance reserves, an examination of all the cases shows that this is not true. "The language used in an opinion must be read in the light of the issues presented." Sinclair v. United States, 1929, 279 U.S. 749, 767, 49 S.Ct. 471, 477, 73 L.Ed. 938, 63 A.L.R. 1258. In the Illinois Life Insurance Co. case, as in Helvering v. Inter-Mountain Life Insurance Co., and Continental Assurance Co. v. United States, supra, also relied on by the Commissioner, the court distinguished between life insurance reserves and "solvency" reserves. There was no question of drawing any line between life insurance reserves and other true insurance reserves. The only reserves to which the language could refer in all three cases were life insurance reserves. The question here presented was not in any manner raised. The Illinois case expressly approved the Inter-Mountain decision where the court said that reserves cannot "include values that do not directly pertain to insurance" (1935, 294 U.S. 686, 690, 55 S.Ct. 572, 575, 79 L.Ed. 1227) with no words restricting the language to "life"

insurance. And the Inter-Mountain case approved the holding of the Court of Claims in the Continental Assurance Co., supra, decision that "the reserve intended by the taxing act as a deduction is the amount set aside from premiums and built up by interest accretions to meet existing unmatured insurance, whether fire, marine, or life insurance" 8 F.Supp. 474, 478. The reserves in question here come completely within this definition, and it is our opinion that Helvering v. Illinois Life Insurance Co., supra, intended in no way to limit this definition. Commissioner v. Oregon Mutual Life Insurance Co., supra; Pan-American Life Insurance Co. v. Comm. of Int.Rev., 1938, 38 B.T.A. 1430, 1438, affirmed, 5 Cir., 1940, 111 F.2d 366.

The contention of the Commissioner has, however, been squarely sustained by the Court of Claims in New World Life Insurance Co. v. United States, 1939, 26 F.Supp. 444, certiorari granted, May 20, 1940, 60 S.Ct. 1070, 84 L.Ed. 1419. In that case, the court refused to allow a percentage deduction of a reserve held by a life insurance company for total and permanent disability benefits included in some of its life insurance policies. The court held that to come within Section 203 (a) (2), a reserve must be a life insurance reserve. We do not agree with the decision. One of the reasons given for the result is that "reserves" held for life insurance contracts as used in the definition in Section 201(a) to distinguish them from the total reserves in deciding in what class a particular company should be taxed must necessarily have the same meaning when used in Section 203(a) (2). This does not follow as the use of the word in Section 201(a) is for classification only and is quite different from the purpose of the word as used in Section 203(a) (2).

If Congress had intended to limit the reserve deduction to life reserves it could easily have said so. In the absence of explicit language, the general meaning of the words as previously construed to apply to other than life reserves should be accepted. Commissioner v. Oregon Mutual Life Insurance Co., supra, 112 F.2d at page 470.

The other main reason given for the decision is that Congress intended to allow a deduction only in regard to reserves which "belong" to the insured, as allegedly

in life insurance, and not where the reserve "belongs" to the company in the event of lapse or cancellation, as in most types of casualty insurance. The question is not what "belongs" to the company, but what Congress wishes to tax as net income. This reasoning appears completely to disregard the fact that Congress wishes to tax only income which is actually available for the general uses of the company. Maryland Casualty Co. v. United States, supra. The reserves here in question are not so available, and the interest added to them is not income and should be deducted. The statute nowhere makes any distinction between funds which "belong" and which do not "belong" to the company. We think the New World Life Insurance case is insupportable, and agree with the results and reasoning of the Circuit Court of Appeals and the Board of Tax Appeals in the decisions directly in point cited above.

The reserve funds here in question are "reserve funds required by law" within the meaning of Section 203(a) (2) of the Revenue Acts of 1932 and 1934, and 3¾ per cent of the mean of the reserve funds held thereunder during the taxable years in question are deductible.

 The only remaining question is raised by the cross-petition of the insurance company which contends that it is entitled to deduct as interest under Section 203(a) (8) the discount paid by it on premiums paid in advance. The Board of Tax Appeals sustained the denial of the deduction. Interest is the amount one has contracted to pay for the use of borrowed money. Deputy v. du Pont, 1940, 308 U.S. 488, 497, 60 S.Ct. 363, 84 L.Ed. 416. The money paid in advance by an insured to the company is not borrowed money. No indebtedness arises on the part of the company on the receipt of the money. The discount allowed is not payment for the use of borrowed money. The discounted sum received is the present value of the future amount due. The amount of the discount is the amount the company expects to earn by the use of the money before the regular due date of the premium. This amount added to the discounted value is expected to equal the amount payable on the due date had the premium not been paid in advance. This is in no sense interest on an indebtedness. See Illinois Life Insurance Co. v. Comm. of Int. Rev., 1934, 30 B.T.A. 1160, reversed on other grounds, 1935, 299 U.S. 88, 57 S.Ct. 63, 81 L.Ed.

56. The Commissioner properly denied the deduction.

The decisions of the Board of Tax Appeals are affirmed.